**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

MAY 1 3 2020

CLERK, U.S. DISTRICT COURT

By_____
Deputy

| | | |
|---|---|---|
| JUAN JIMENEZ-NAVA  a.k.a. | § | |
| CESAR EDMUNDO MURGUIA | § | |
| Petitioner, | § | |
| v. | § | CASE No. 4:18-CR-00093-A-3 |
| | § | |
| UNITED STATES OF AMERICA | § | |
| Respondent. | | |

---

**MEMORANDUM OF LAW IN SUPPORT OF A MOTION TO VACATE, SET ASIDE**

**OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

---

NOW COMES, the petitioner, Juan Jimenez-Nava a.k.a. Cesar Edmundo Murguia, by
and through pro-se, who hereby files the foregoing Memorandum of Law in Support
of his motion to pursue a collateral claim pursuant to 28 U.S.C. § 2255. This
motion under 2255 is brought under the governing law of **Strickland v. Washington**
466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), additionally
**90 Supreme Court Cases and 28 District Court Cases,** support the petitioner's
arguments. The petitioner respectfully asks this Honorable District Court to
liberally construe his pleadings under the standard governing pro-se submissions
as announced in the Supreme Court's decision of **Haines v. Kernez** where the Court
stated, **"The Court affords a liberal construction to a pro-se litigant's plead-
ings, holding them to a more lenient standard than those drafted by an attorney."**
**Haines v. Kernez,** 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); **Erickson
v. Pardus,** 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). In
support of the enclosed pleadings the petitioner, herein after referred to as
"petitioner" further submits the following arguments relying on the assistance
of inmates with **"Non-Professional Legal Experience."** The petitioner's Memorandum
of Law in Support of his 2255 motion, the **Memorandum Evidence** is clear in demon-
strating the petitioner's Constitutional injury. **Also explained is how negli-
gence, misrepresentation and prejudice caused the petitioner to involuntary
plead guilty. The plea was not intelligently made nor a voluntary choice, as
a result, it cannot stand.**

## SUPREME COURT CASES

1.  BERGER V. UNITED STATES     (1935)      2,
2.  STRICKLAND V. WASHINGTON   (1984)   5,8,9,12,14,15,17,18,19,24,
                                           28,30,32,36,42,
3.  HILL V. LOCKHART         (1985)     5,19,22,28,
4.  KIMMELMAN V. MORRISON     (1986)      5,17,
5.  NORTH CAROLINA V. ALFORD   (1968)     10,23,25,
6.  JOHNSON V. AVERY        (1969)       11,
7.  KURTZ V. MOFFITT        (1885)       11,
8.  BOUNDS V. SMITH         (1971)      11,12,
9.  HATFIELD V. BAILLEAX      (1961)       11,
10. GILMORE V. LYNCH        (1971)       11,
11. CASEY V. LEWIS          (1996)       11,
12. HARRIS V. NELSON        (1969)       12,
13. HAINES V. KERNEZ       (1972)       12,
14. HENSLEY V. MUNICIPAL COURT  (1973)       12,
15. REED V. ROSS           (1984)       12,
16. MURRY V. CARRIER       (1986)       12,
17. COMER V. SCHRIRO (COURT OF APPEALS NINTH CIRCUIT) (2005)  12,
18. GIDEON V. WAINRIGHT      (1963)     13,14,15,
19. POWELL V. ALABAMA      (1932)     13,15,16,
20. EDWARDS V. CARPENTER     (2000)      13,
21. BRADY V. UNITED STATES    (1970)     13,21,25,26,27,
22. BOUSLEY V. UNITED STATES   (1998)      13,24,
23. HENDERSON V. MORGAN      (1976)      13,
24. KIMMELMAN V. ROBINSON    (1986)      14,16,
25. KATZ V. UNITED STATES     (1967)      14,
26. RAWLINGS V. KENTUCKY     (1980)      14,38,
27. UNITED STATES V. CRONIC   (1984)     14,15,16,
28. UNITED STATES V. ASH     (1973)       15,
29. ARGERSINGER V. HAMLIN    (1972)      15,18,
30. JOHNSON V. ZERBST      (1938)       15,
31. MAINE V. MOLTON        (1985)       15,
32. AVERY V. ALABAMA       (1940)       15,
33. EVITTS V. LUCEY         (1985)      15,16,
34. CUYLER V. SULLIVAN      (1980)      15,28,
35. McMANN V. RICHARDSON     (1970)     15,18,24,25,28,

36. STONE                                                          16,
37. HERRING V. NEW YORK                        (1975)    16,
38. ADAMS V. UNITED STATES EX. REL. McMANN (1942)    17,18,
39. LAFLER V. COOPER                           (2012)    18,19,20,
40. MISSOURI V. FRYE                           (2012)    18,
41. PADILLA V. KENTUCKY                        (2010)    18,19,20,
42. LIBRETTI V. UNITED STATES                  (1995)    19,
43. VONMOLTKE V. GILLIES                       (1948)    19,25,26,27,
44. McCARTHY V. UNITED STATES                  (1969)    21,25,
45. BOYKIN V. ALABAMA                          (1969)    21,23,24,25,
46. PARKER V. RALEY                            (1992)    21,
47. UNITED STATES V. RUIZ                      (2002)    21,
48. MACHIBRODA V. UNITED STATES               (1962)    23,25,
49. KERCHEVAL V. UNITED STATES                 (1927)    25,
50. CHAMBER V. FLORIDA                         (1940)    25,
51. WALKER V. JOHNSTON                         (1941)    25,27,
52. SMITH V. O'GRADY                           (1941)    25,27,
53. WALEY V. JOHNSTON                          (1942)    25,
54. WELLS V. UNITED STATES                     (1943)    25,27,
55. HAWK V. OLSON                              (1945)    25,27,
56. WOODS V. NIERSTHEIMER                      (1946)    25,
57. TOWNSEND V. BURKE                          (1948)    25,
58. QUICKSALL V. MICHIGAN                      (1950)    25,27,
59. MOORE V. MICHIGAN                          (1957)    25,
60. MEMPA V. RAY                               (1967)    25,
61. UNITED STATES V. JACKSON                   (1968)    25,
62. PARKER V. NORTH CAROLINA                   (1970)    25,27,
63. WILLIAMS V. KAISER                         (1945)    25,
64. CARTER V. ILLINOIS                         (1946)    25,
65. DEMEERLEER V. MICHIGAN                     (1947)    25,
66. FOSTER V. ILLINOIS                         (1947)    25,
67. BUTE V. ILLINOIS                           (1948)    26,
68. PATERNO V. LYONS                           (1948)    26,
69. UVEGES V. PENNSYLVANIA                     (1948)    26,
70. PALMER V. ASHE                             (1951)    26,
71. PENNSYLVANIA EX REL HERMAN V. CLAUDYK (1956)    26,
72. KIRK V. LOUISIANA                          (2002)    29,31,
73. WILKES V. WOOD                             (1763)    31,
74. GROH V. RAMIREZ                            (2004)    31,

75. PAYTON V. NEW YORK                  (1980)        31,38,
76. TERRY V. OHIO                       (1968)        31,
77. SCHNECKLOTH V. BUSTAMONTE           (1973)        31,34,37,
78. ILLINOIS V. RODRIGUEZ               (1990)        31,
79. ARIZONA V. GANT                     (2009)        34,
80. BYRD V. UNITED STATES               (2018)        38,
81. RAKAS V. ILLINOIS                   (1978)        38,
82. ALDERMAN V. UNITED STATES           (1969)        38,
83. SMITH V. MARYLAND                   (1979)        38,
84. UNITED STATES V. JONES              (2012)        38,
85. MINNESOTA V. CARTER                 (1998)        38,
86. TERRY V. OHIO                       (1968)        39,
87. TENNESSEE V. GARNER                 (1985)        40,
88. HUDSON V. MICHIGAN                  (2006)        40,
89. WILSON V. ARKANSAS                  (1995)        40,
90. RICHARDS V. WISCONSIN               (1997)        40,

## DISTRICT COURT CASES

1. UNITED STATES V. AMAYA    (5th CIR. 1997)            13,
2. JAMES V. CAIN             (5th CIR. 1995)            13,
3. MORRIS V. THALER          (5th CIR. 2011)     22,29,33,35,36,
4. UNITED STATES V. COVITT   (5th CIR. 2008)      22,23,35,36,
5. BROCK V. UNITED STATES    (5th CIR. 2017)        23,36,
6. WELLS V. THALER           (5th CIR. 2012)          24,
7. UNITED STATES V. URIAS-MARRUFO (5th CIR. 2014)     24,
8. UNITED STATES V. BATAMA   (5th CIR. 2015)          24,
9. UNITED STATES V. JUAREZ   (5th CIR. 2012)          24,
10. UNITED STATES V. DOVALINA (5th CIR. 2001)         28,
11. UNITED STATES V. HERNANDEZ(5th CIR. 2000)         30,
12. HERRING V. ESTELLE        (5th CIR. 1974)        32,36,
13. UNITED STATES V. ROGERS   (5th CIR. 1990)         33,
14. STREETMAN V. LYNAUGH      (5th CIR. 1987)         33,
15. UNITED STATES V. GOMEZ-DIAZ(5th CIR. 1983)        34,
16. UNITED STATES V. KELLY    (5th CIR. 1993)         34,
17. UNITED STATES V. SMITH    (5th CIR. 1992)         34,
18. UNITED STATES V. WALDROP  (5th CIR. 2005)         35,
19. UNITED STATES V. CASTRO   (5th CIR. 1999)         35,

20. CALIFORNIA V. HODARI                                      35,
21. SMITH V. ESTELLE                  (5th CIR. 1983)         35,
22. UNITED STATES V. McDONALD         (5th CIR. 2011)         36,
23. UNITED STATES V. GOMEZ-MORENO(5th CIR. 2007)             37,
24. UNITED STATES V. JONES            (5th CIR. 2001)         37,
25. UNITED STATES V. KELLET           (5th CIR. 1993)         37,
26. UNITED STATES V. OLIVIER-BECERRIL (5th CIR. 1988)        37,
27. UNITED STATES V. GALBERTH         (5th CIR. 1988)         37,
28. UNITED STATES V. STANDRIDGE       (11th CIR. 1987)       38,

## TABLE OF CONTENTS FOR THE MEMORANDUM OF LAW
## IN SUPPORT OF THE 2255 MOTION TO VACATE

I.   OPENING STATEMENT AND PRAYER FOR RELIEF:

II.  FACTUAL BACKGROUND AND CASE HISTORY:
     A) HISTORY OF EVENTS:

III. OVERVIEW OF PETITIONER'S CONSTITUTIONAL INJURY:

IV.  THE INHERENT PROBLEMS FACED BY PRO-SE ALIEN PRISONERS IN THE
     HABEAS CORPUS PROCESS:

V.   THE FUNDAMENTAL RIGHT TO EFFECTIVE COUNSEL:
     A) PLEA BARGAINING AND THE SIXTH AMENDMENT;
     B) THE INVOLUNTARY PLEA PROCESS;
     C) CASE LAW OVERWHELMINGLY SUPPORTS THAT THE PETITIONER'S
        PLEA WAS INVOLUNTARY OBTAINED;
     D) DUE PROCESS AND THE REQUIREMENT THAT THE PLEA BE INTELLIGENTLY
        AND VOLUNTARILY MADE;
     E) GUILTY PLEAS BY MISREPRESENTATION DECEPTION, AND/OR NEGLIGENCE
     F) THE INVOLUNTARY GUILTY PLEA ARGUMENT CONCLUSION;

VI.  FOURTH AMENDMENT ARGUMENT:
     A) A MERITORIOUS FOURTH AMENDMENT VIOLATION;
     B) COUNSEL'S FOURTH AMENDMENT OBLIGATIONS;
     C) AN OVERNIGHT GUEST'S FOURTH AMENDMENT STANDING;
     D) PSYCHOLOGICALLY COERCED INVALID NON-STANDING CONSENT;
     E) FAILURE TO MOTION TO SUPPRESS EVIDENCE IS CONSTITUTIONALLY
        INEFFECTIVE ASSISTANCE OF COUNSEL;
     F) THE FIFTH CIRCUIT SIX CRITICAL VOLUNTARY CONSENT FACTORS
        AND CONSTITUTIONAL CONSIDERATIONS;
     G) THE FAILURE TO KNOCK AND ANNOUNCE POLICE PRESENCE;

VII. CONCLUSION:

## I. OPENING STATEMENT AND PRAYER FOR RELIEF:

**There are certain cases where Constitutional injury clearly warrants relief and this is one of those rare and exceptional cases.**

In our modern adversarial **"Justice System of Pleas,"** not trials, where 97% of defendants plead guilty, its more than probable that our "System of Pleas" places a premium on the need for speedy pleas at the expense of the critical **"Truth-Finding Function of the Courts." See; "Plea Bargaining's Rule in Wrongful Convictions." BIBAS,** at 157, critiquing modern Plea Bargaining because it "puts efficiency ahead of accuracy."

Why do innocent defendants accept pleas for crimes they did not commit? They maybe pressured, certainly they are afraid if not terrified of the harsh reality of the mandatory sentencing guidelines. Even with effective counsel its well known fact, that **in our Justice System, the innocent do, infact, plead guilty.** Fairness and Truth-Finding are the ultimate imperatives within our **"Justicies' Due Process Requirement,"** yet there will always be the unfortunate cases where the innocent plead guilty, in fear of the possibilities of life within the incredibly harsh, Federal Bureau of Prisons System.

The National Registry of Exonerations, has identified as of 2018, at least 73 Americans who plead guilty to murder or manslaughter but who were later exonerated. Further to this incredible fact, the National Association of Criminal Defence Lawyers has stated that more than 10% of the 353 Americans whom the Innocence Project has helped exonerate through DNA evidence, pleaded guilty. **"The Innocence Project, DNA exonerations in the United States,"** available at **WWW. INNOCENCE PROJECT.ORG/DNA-EXONERATIONS-IN-THE-UNITED-STATES** (noting that 40 of 358 exoneress pled guilty). The question is what makes this injustice possible.

In this 2255 motion and the Memorandum of Law in Support thereof, **Mr. Juan Jimenez-Nava a.k.a. Cesar Edmundo Murguia, herein-after referred to as the petitioner,** will explain with evidence and through the record, why he is in fact innocent of the charge he was convicted of; how is plea was involuntary obtained through deficient and ineffective assistance of counsel and finally, how the record confirms his Constitutional injury as a result of both the ineffective assistance of his former counsel Ms. Pia Lederman, and how his involuntary and unintelligently made guilty plea, was accepted by this Court in violation of the Constitution. As a result of a breakdown in both our Adversarial Justice Process, combined with a severance or breakdown in the **contract between defendant and counsel,** the

Sixth Amendment that guarantees competent representation, was violated, the Fourteenth and the Fourth Amendment were all part of this complete and somewhat shocking miscarriage of justice.

Legal Scholars believe that false guilty pleas are even more common for less serious offences when **"The Cost-Benefit,"** analysis makes a plea that results in a minor, or less than incredible sentence, enticing. See, John H. Blume & Rebecca K. Helm, **"The unexonerated; Factually Innocent Defendants Who Pled Guilty,"** 100 Cornell Rev. 157, 173 (2014); see also BIBAS, **"Plea Bargaining Outside the Shadow of Trial,"** at 2495, (explaining that, **"Prosecutorial Bluffing is likely to work particularly well against innocent defendants, who are on average more risk adverse than guilty defendants."**); also see Samuel R. Gross & Barbara O'Brien, "Frequency and Predictors of False Conviction," "Why We Know So Little and New Data on Capital Cases," 5J Empirical Legal Stud., 927, 930 (2008): ("It is entirely possible that most wrongful convictions...are based on negociated guilty pleas to comparatively light charges.").

The Constitution of the United States begins with a promise to "Secure the Bless-ings of Liberty to Ourselves and Our Posterity," and is meant to prohibit both Federal and State Governments from depriving a person of that liberty without "Due Process of Law." Any involuntary or unintelligent plea, deprives the accused of his or her rights, and Due Process; **"U.S. CONSTITUTION." Preamble, Amendments V, XIV.** It is also very difficult to think of greater deprivations of liberty than being wrongfully convicted and sentenced as a result of ineffective legal advice, by counsel who maybe unfortunately more interested in speed, than investigating and testing effectively the prosecution case, it is clear that counsel is obli-gated by law to fulfill their obligations under **Strickland** and the Sixth Amendment.

The petitioner's involuntary plea and the resulting tragic conviction, also offends the **"Twofold Aim,"** of our Justice System, "which is that guilt shall not escape nor innocence suffer." See, **Berger v. United States**, 295 U.S. 78, 88, 5 S. Ct. 629, 79 L. Ed. 1314 (1935).

Mr. Jimenez-Nava, as a result of counsel's errors and deficient performance, received an extraordinary sentence that he was not guilty of. He was clearly, as the record confirms, **an overnight guest at a location where DEA agents entered and found drugs.** The record confirms that the petitioner had only arrived in Dallas less than 48 hours before he was arrested during the raid, **and there was another unknown male who occupied the apartment and was there for weeks even months before the petitioner arrived at the Dallas apartment.** This "Unknown Hispanic Male," has never been identified or found, yet the record seems to on

occasion, imply falsely, that the Unknown Hispanic Male was in fact the petitioner. The evidence in both the record and this Memorandum proves beyond any doubt, that the assumption or claim, that the petitioner was, is in fact 100% in error, and not supported by the record.

He did plead guilty, signed a factual resume and agreed with the Judge during his sentencing and plea hearing but so did at least 10% of the 358 wrongfully convicted defendants exonerated by the Innocence Project. It is impossible to identify all the reasons innocent people plead guilty within the confines of the single motion, but the data from The Innocence Project confirms, "The Innocent Do Plead Guilty." Regardless of precisely why, the fact still remains, as a confirmed and factual derivative of our system of guilty pleas.

As this motion and case law supports, defence lawyers are required by their rules of professional conduct, **to be ultimate equalizers in our adversarial justice system.** They are required by professional duty to zealously and loyally defend their clients against State, supposedly serving as, **"an antidote to the fear, ignorance and bewilderment of the impoverished and uneducated defendant."** Yet many legal critics of Plea Bargaining, question whether the quality of representation of defendants in the Plea Bargaining Process, merits this optimistic, somewhat romantic view.

The same critics suggest that defence attorneys like other people, desire money and for any attorney there are two basic ways to become financially successfull; (1) develope a reputation as a High-Quality Trial Attorney; or (2) do a very high volume of **"the bussiness of guilty pleas."** The latter approach is of course the path of least resistance. But this approach means less review and investigation of case loads. Thus to handle larger quantities of cases, a defense attorney must try very few cases and in short, "become pleaders."

The Constitutionally unfortunate result is that; innocent defendants can easily receive misleading advice or **"passive misrepresentation,"** (1901) meaning "the acts of remaining silent under circumstances that makes the silence seem to support a false statements validity." **Meaning in the petitioner's argument, when former counsel did not advice about the Meritorious Fourth Amendment argument, and remained silent after being told that approximately 15 agents took a key from an arrested and in custody 19 year old defendant, and without any person's consent or even attempting to obtain consent or search warrant, surprised the petitioner by bursting into the apartment, unannounced.** This attorney misrepresentation by silence is also, "the act of leading a defendant to believe

3

something that is not true, without actually making any false statements."

In the context of what took place leading to the involuntary and unintelligent guilty plea of the petitioner, **former counsel did know, or should have known in her capacity as a criminal defence lawyer, the Fourth Amendment argument violations including that all the evidence against the petitioner, and his very presence in the conspiracy, could have been and quite possibly would have been, suppressed,** had former counsel, Ms. Lederman, simply investigated further after being told about the arrest and illegal entrance into the home, and then filed a simple investigated suppression motion, challenging the illegal entry, the lack of a warrant and the lack of any legal consent by a person authorized under the law to provide consent.

Further as this Memorandum and Record of Evidence Supports, the petitioner received misleading advice, or negligent advice and became unduly influenced as a result to plead guilty. This is clear Constitutional Injury suffered by the defendant as a result of former counsel's deficient and unconstitutional performance. Whether this was a deliberate choice by counsel to save money, time and effort, or whether by negligence, the 262 months, 21 years 10 months sentence was extraordinary and illegally obtained and therefore cannot stand.

A further legal and prejudicial key factor that this motion will demonstrate for the Court is that even negligence by counsel causing an involuntary plea process is Constitutional Injury and cannot stand.

It is true that even the most ethical but fatigued and overwhelmed defender with a large case load is more apt to rely too heavily on plea bargaining and as a result, will not spend the time and effort required to professionally investigate the critical facts of a criminal case. This attorney's negligence can and does lead to wrongful convictions as demonstrated by what took place in the petitioner's guilty plea. Had he been informed by counsel that a suppression motion would have resulted in him being exonerated, he would have for certain chose the trial option, yet ineffective assistance of counsel deprived him of that choice and right.

Incompetent representation, as noted above can include incentives to plead out criminal cases. This issue can also be influenced by the attorney's desire and incentive to cooperate with the prosecutors with whom they must deal with on a daily basis. This desire to cooperate further enhances the risk that an innocent person will be convicted, poorly advised or constitutionally convicted.

4

Ineffective representation as defined by this motion, explained in **Strickland v. Washington, Hill v. Lockhart, Kimmelman v. Morrison,** and numerous other cases on this subject, helps to establish that pleas are no more reliable than trials. Also many **Critics of Plea Bargaining** believe and as this motion confirms, an uninformed innocent defendant is easily placed under too much pressure and is as a result, especially risk adverse to pleading guilty even though he may be actually innocent of the crime he pleads to.

Although the petitioner did plead guilty, he did so unknowingly, **the entire guilty process, including the comments in open Court to the questions from the Judge, was in fact obtained involuntary, and cannot stand as intelligently made.**

The petitioner in the detailed argument that follows, will demonstrate that his plea was involuntary obtained by the Court as a result of deficient performance and clear prejudicial misrepresentation by former counsel. This ineffective assistance whether by deceit or even negligence created a breakdown in the adversarial justice process rendering the result unconstitutional. Therefore the petitioner's conviction cannot stand and must be vacated by this Court.

## II. FACTUAL BACKGROUND AND CASE HISTORY:

**1)** On October 12, 2018, the petitioner, Mr. Juan Jimenez-Nava a.k.a. Cesar Edmundo Murguia, was sentenced by involuntary plea to 262 months or 21 years 10 months in custody. He also received five years of supervision after his release and although a resident with family in the United States, he will face deportation, in April 11, 2037, when he is released.

**2)** The petitioner is a father of 4, two of his sons were born in the United States and he has been married for 22 years. The petitioner as described within this motion, was a victim of ineffective assistance of counsel and unintelligently plead guilty because his lawyer failed to advise or investigate the facts of his arrest related to a **Meritorious Fourth Amendment Illegal, Warrantless Search,** and entry of a home where the petitioner having arrived less than 48 hours earlier, was an overnight guest.

**3)** The petitioner was not told about the options to suppress his presence in the home or the drugs found hidden in the home. **This obvious Fourth Amendment claim had it been pursued by counsel, would more likely than not, resulted in his acquittal at trial for certain.** There is a reasonable and logical probable outcome of success when a warrantless search of a home takes place, especially

5

when a search warrant could have been requested but was not by the agents. Without the evidence in the apartment the petitioner has no connection to the conspiracy charge he plead guilty to. Without the apartment search there was no feasible or evidentiary process for agents to connect the petitioner to the charges and to obtain a conviction much less an agreement to plead guilty.

**4)** This ineffectiveness of counsel resulted in an unintelligent and involuntary plea process. It also nulifies the plea to the Court as when the petitioner made the plea, his counsel had voided her duty by not having properly informing him or protecting him, the result of this broken process was a complete miscarriage of justice.

## A) HISTORY OF EVENTS:

**1)** DEA agents on March 28, 2018, (day one of this case), received information from an unknown confidential source, claiming to receive methamphetamine from a person identified as, **"Viejoto"** who is in Mexico. **Through this relationship the "CS" (confidential source), arranges for an undercover agent (UA), to purchase meth from "Viejoto." See PSR Page 3, Paragrapgh 5.**

**2)** Undisputed witness testimony at the sentencing hearing on October 12, 2018, plus **Exhibits** presented; (vehicle registration, vehicle inspection, liability insurance card all of them from San Antonio) see **Sentencing Hearing Transcripts Testimony Page 10, Lines 10 and 11,** of Ms. Laura Rodriguez, the petitioner's sisters; confirms the petitioner for two weeks was with his sister and family prior to the arrest, in a town called Cibolo, North of San Antonio, Texas roughly five hours drive distance from the Dallas home where the arrest took place.

**3)** There is no evidence connecting the petitioner to both the others who were arrested, nor to the location of the arrest, (an apartment at 9765 Webb Chapel Road, Apt. # 2014. located in Dallas, Texas), until he arrives there on April 2, 2018, at 10 pm after driving from "Cibolo, Texas."

**4)** On April 3, 2018, the petitioner spends the day looking for employment. He also purchases a blow up mattress, food and other items, toiletries and returns to the apartment.

**5)** On the morning of April 4, 2018, the day of the arrest, the petitioner spent the day driving around looking for work and potential locations (residential areas), where he could move to in the future. **(See Affidavit Petitioner Exhibit 1, Paragraph 5.)**

6

**6)** At 7pm the evening of April 4, 2018, approximately 15 heavily armed agents with assault rifles entered the apartment as the petitioner came out of the bathroom an agent pressing the assault rifle barrel to his face pushed him to the ground.

**7) The agents did not knock or announce they were coming into the home, they did not have a search warrant, and they did not read the petitioner (although hand-cuffed and arrested), any Miranda warnings or statements.**

**8)** Upon the illegal and warrantless search, the agents found methamphetamine hidden in a bedroom closet, and cell phones that did not belong to the petitioner. **See PSR Paragraph 11, and Factual Resume Page 2 stipulated facts.**

**9)** Agents also found the petitioner's luggage, clothes, toiletries, keys to his car, and the blow up mattress he had pruchased that was set up in the living room where he slept.

**10)** While the petitioner sat handcuffed and arrested, the agents disposed of liquids and some obvious unknown by flushing them down drains in the apartment. **See Exhibit 1, Paragraph 19.**

**11)** The petitioner was appointed counsel, Ms. Pia Lederman, on April 5, 2018, the petitioner plead not guilty. On May 25, 2018, the petitioner, without any knowledge of the option to suppress every piece of evidence against him, was instructed by counsel that the only option he had was to plead guilty. **See Exhibit 1, Paragraph 8.**

**12)** The Sentencing Hearing Transcripts on pages 27-30, detail the petitioner simply agreeing with the Court, **until Page 29, Lines 22-25, and Lines 1-8, on Page 30.** At this point it becomes clear that the petitioner is disagreeing with the claims against him, and an exchange occcurs that disrupts the plea process. Here the exchange between the petitioner and his former counsel show clearly, a disagreement in the **"Court's record of events,"** yet at this point to continue down **"Former Counsel's Plead Out Plan,"** Ms. Lederman states to the petitioner; **"do not worry thats all hearsay,"** See Exhibit 1, Paragraph 10, petitioner's **statement.** Counsel instructing the petitioner to agree with false or hearsay statements read by the Judge as part of the plea colloquy, is simply unacceptable and is of course, Constitutional prejudicial. On this one claim, as the record supports, there is a potential **Constitutional Claim.** Counsel's advice to not worry about hearsay and agree to plead guilty to it, was Constitutionally, and

procedurally unacceptable, as it further tainted the already unintelligent and involuntary plea process, that counsel's ineffective assistance created.

**13)** On October 12, 2018, the petitioner was sentenced to the 21 years 10 months or 262 months, due to the evidence found within the apartment by the illegal entry and warrantless search of the agents, and, by the ineffective assistance of Ms. Lederman, who refused to even consider the investigation of the illegal and warrantless search claiming falsely and negligently, that the petitioner's only option was to plead guilty, this was clearly attorney's error.

**14)** Upon the petitioner's arrival at FCI OAKDALE II, in OAKDALE, LOUISIANA, the petitioner speaking with inmates about his arrest and conviction, was informed about his Fourth Amendment Rights. He then spent months reading case law and trying to understand his rights and also the issues within his case.

**15)** The petitioner, while in Direct Appeal process, wrote the Court to request a new attorney as it was very obvious that Ms. Lederman, whom had advised him wrongfully to plead guilty, would not on her own attempt to fix the errors of the involuntary plea.

**16)** The letters to the Court were written on:
   A) February 14, 2019; See Exhibit 3
   B) March 14, 2019; See Exhibit 4
   C) March 30, 2019; See Exhibit 5
   D) August 12, 2019; See Exhibit 6

**17)** The February 14, 2019 letter **(Exhibit 3)** details serious issues including this statement, **"As a result of a number of critical errors I have now insisted upon an Appeal of my sentencing and possibly my guilty plea." Paragraph 5, Page 1 of 2.**

**18)** The March 14, 2019 letter **(Exhibit 4)** to the Court reiterates further Constitutional Injury Concerns about the Fourth and Fourteenth Amendment combined clearly with concerns regarding **Strickland** standards and the Sixth Amendment right to assistance of counsel on Appeal.

**19)** The March 30, 2019 letter **(Exhibit 5)** to the Court over six pages helps to explain the petitioner's **"Constitutional Injury Claims,"** as a result of counsel's deficient advice. Plus it further confirms that the plea was involuntary obtained. This document also points out that there are, **"several key issues that helped to secure my wrongful conviction."** And also motion/requested the Court appoint

8

defenders office to handle the Direct Appeal, simply because counsel would not acknowledge or address her own Constitutional errors voluntarily, making her ability to perform as required by **Strickland** on Appeal of the sentencing, **"Highly Unlikely,"** and a direct conflict to the petitioner's ability to have effective counsel as guaranteed by the Sixth Amendment, in the Appeal process; as the ruling from the Appelant Court confirmed on November 8, 2019, Ms. Lederman failed to ask for clarification regarding a critical issue, and this error resulted in significant prejudice for the defendant, and the loss of the Appelant Courts consideration for warranting a mitigating sentence reduction or downward departure for a minimal role in the conspiracy.

20) The following pages explain **the Constitutional Injury suffered by the petitioner as a result of former counsel's negligence, which not only violated the petitioner's Constitutional Rights but further caused him to enter into an involuntary unknowing and unintelligently obtained guilty plea.** The sentence and prejudice suffered by the petitioner was in fact a complete miscarriage of justice.

### III. OVERVIEW OF PETITIONER'S CONSTITUTIONAL INJURY:

1) When transgressions of Constitutional Rights occur, the result can easily be a complete miscarriage of justice. Such are the facts in this case because, a judgment of conviction must be vacated when it appears that a guilty plea would never have been tendered, if a defendant had been properly advised by counsel.

2) This is an exceptional case where both ineffective assistance of counsel and prejudice are clearly established. As a result the Court will routinely grant relief when a guilty plea is induced by a lawyer's ignorance or misadvice. **The plea of a criminal defendant, thus misinformed, maybe said to be both, involuntary and also unintelligently made.**

3) Furthermore, when the negligence misadvice of the defendant's lawyer is so gross, as to amount to the clear denial of the Constitutional Right to effective assistance of counsel, thereby leading the defendant to enter an improvident plea, the Court must consider vacating the sentence and permitting the withdraw of the plea as it is clearly a consequence of the deprivation of the Constitutional Right to effective assistance of counsel. Deprivation of a defendant's Constitutional Rights, cannot be left unredressed.

4) Further when counsel's Constitutional errors, has occasioned the entry of an involuntary and unintelligent guilty plea, the inevitable redress is an order

striking the plea and/or the release of the prisoner.

**5)** The Fourteenth Amendment basically outlaws coerced guilty pleas in prosecutions, because a coerced guilty plea is of course, an infrigment upon the right not to plead guilty. **North Carolina v. Alford**, 405 F. 2d 340 June 18, 1968. Furthermore, a defendant who pleads guilty is not barred in all circumstances from raising antecedent Constitutional Claims because, although a defendant assumes the risk of and "ordinary error," by his attorney, he certainly does not although assume the risk that his attorney is fully competent. Clearly if an attorney's advice, conduct, errors and/or negligence, does not fall within the range of what competence demands of an attorney in all criminal cases, then the defendant may attack the "wrongfully obtained or involuntary-obtained, guilty plea."

**6)** The petitioner **"brings this motion to explain key and fundamentally critical Constitutional injuries, obtained as a result of his attorney's negligence, deceit or more directly, unconstitutionally acceptable ineffective representation."**

**7)** This Court will recognize the following critical Constitutional violations. As a result the petitioner asks this Honorable Court to, vacate his sentence, or alternativelly, order an evidentiary hearing to further develope the documented record of Constitutional injury, thus further uncovering the factual basis and truth that this Honorable Court shall recognize as clear grounds for vacation of the wrongfully imposed sentence, derived from the petitioner's involuntary and unintelligently made guilty plea.

**8) THE PETITIONER'S CONSTITUTIONAL INJURY:**
  A) The petitioner's guilty plea was clearly involuntary and unintelligently obtained through ineffective assistance of counsel;
  B) The petitioner's conviction was obtained through a violation of due process and is as a result also a miscarriage of justice;
  C) The petitioner's Sixth, Fourth and Fourteenth Amendment Rights were all infringed resulting in clear Constitutional Injury warranting the Court's relief;
  D) A guilty plea obtained by misrepresentation, negligence of counsel, or even involuntary negligence, cannot be knowingly and voluntarily obtained as required by our Justice System;
  E) The petitioner's counsel was negligent when **she failed to motion** or request the Court to explain its ruling for a **"minimal role"** adjustment;
  F) Counsel also **failed to object to damaging hearsay evidence gave by Government Agent** in the sentencing hearing and the hearsay evidence

10

given, was prejudicial;

G) Counsel failed to establish the facts related to the Fourth Amendment violation of the petitioner, when the Government Agent testified at the sentencing hearing. The result there of, created a false narrative for the Court's consideration and this was both prejudicial and negligent representation of the petitioner.

## IV. THE INHERENT PROBLEMS FACED BY PRO-SE ALIEN PRISONERS IN THE HABEAS CORPUS PROCESS:

**1)** The petitioner is incarcerated at FCI OAKDALE II, an alien prison/detention center with an extremely limited law library that is most probably, the smallest within the BOP system. It is wholly inadequate to support complex applications such as this 2255 motion.

**2)** The Supreme Court has recognized the inherent problems faced by prisoners, and by the Courts, when prisoners are force to file Habeas petitions pro-se. In **Johnson v. Avery,** the Court held that a State could not bar prisoners from furnishing assistance to other prisoners in filing Habeas Corpus petitions. The Court stated also that, while it is true that a Habeas Corpus proceeding is civil in nature, See e.g., **Kurtz v. Moffitt,** 115 U.S. 487, 494, 29 L. Ed. 458, 6 S. Ct. 148 (1885), it is equally true that such a proceeding is dramatically different from any other civil action. As the Supreme Court stated, Habeas Corpus proceedings are "Fundamental importance...in our Constitutional 'scheme because they directly protect our most valued rights." **Bounds,** 430 U.S. 225, 234-35, L. Ed. 2d 705, 92 S. Ct. 2151 (1972).

**3)** FCI OAKDALE II is an alien prison with approximately 90% of the inmates from Mexico and South America. Less than 2% speak, read and write english, and most of the staff that work in this prison speak only english. Of the almost 900 inmates less than 20 are known as American Citizens.

**4)** FCI OAKDALE II also mentioned above, has an extremely limited legal library perhaps the smallest within the Federal Bureau of Prisons (BOP) system, and the BOP corlinks law library system is extremely limited and is no way adequate to support a Constitutional motion of this substance and importance. Lack of access to case law is in fact prejudicial. **Hatfield v. Bailleax, Gilmore v. Lynch, Johnson v. Avery, Bounds v. Smith and Casey v. Lewis.** None of the page limit rules are available at FCI OAKDALE II, so the petitioner will enclose a motion to exceed the local page limit rule if required.

11

5) The petitioner prays that, this Court will recognize as the Supreme Court has recognized, that the Writ of Habeas Corpus is the fundamental instrument for safeguarding the individual freedoms of the people against arbitrary and lawless State action. **Harris v. Nelson**, 394 U.S. 286, 290-91, 22 L. Ed. 2d 281, 89 S. Ct. 1082 (1969).

6) It is in essence **"The first line of defense against Constitutional violations."** **Bounds v. Smith**, 430 U.S. 817, 828, 52 L. Ed. 2d 97 S. Ct. 1491 (1971). Mr. Jimenez-Nava pleads with the Court, respectfully that this Court liberally construe his pleadings under standards governing pro-se submissions announced in the landmark Supreme Court decision. **Haines v. Kernez**, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).

7) In **Hensley v. Municipal Court**, 93 S. Ct. 1571 (1973), the Court emphasized that the Habeas Corpus is not, **"A static, narrow, formalistic remedy."** In **Reed v. Ross**, the Court went further stating, **"The writ demonstrates, "Congress,"** **expressed interest in providing a federal forum for the vindication of Constitutional rights of State prisoners," Reed v. Ross**, 468 U.S. 1, 10, 104 S. Ct. 2901, 82 L. Ed. 201 (1984). Habeas Corpus, **"Is not a 'static, narrow, formalistic remedy,'" "but one which retains the ability to cut through the barriers of form and procedural mazes." Murry v. Carrier**, 477 U.S. 478, 501, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

8) Its "central concern," is "FUNDAMENTAL FAIRNESS." **Strickland v. Washington**, 466 U.S. 668, 697, 104 S. ct. 2052, 80 L. Ed. 2d 674 (1984), quoted from **Comer v. Schriro**, May 17, 2005, 463 F. 3d 934, **Court of Appeals Ninth Circuit.**

10) Giving the overwhelming evidence contained within this record of the peti-tioner's Constitutional and prejudicial violations, and the fundamental impor-tance of the "writ," **the petitioner prays that this Court, "as mentioned in Harris v. Nelson**, 22 L. Ed. 2d 281, 89 S. Ct. 1082 (1969), **administer it with the initiative and flexibility essential to ensure that miscarriages of justice within its reach are surfaced and corrected and not suffocate the Writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements."** Quoting **Hensley v. Municipal Court**, 411 U.S. 345, 350, 36 L. Ed. 2d 294, 93 S. Ct. 1571 (1973).

11) The petitioner pleads with this Court to review this Memorandum <u>with the consideration of the totality of the evidence it contains</u>, and to further consider the petitioner.

### V. THE FUNDAMENTAL RIGHT TO EFFECTIVE COUNSEL:

**1)** As previously stated the right to the effective assistance of counsel at trial is a fundamental and bedrock principal in our Justice System. It is deemed as as **"OBVIOUS TRUTH,"** the idea that **"any person haled into Court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."** **Gideon v. Wainwright**, 372 U.S. 335, 344, 83 S. Ct. 792 (192 L. Ed. 2d 285) 9 L. Ed. 2d 799 (1963). Indeed, the right to counsel is the foundation for our adversarial Justice System. <u>Defense counsel must also test the prosecution's case to ensure that the proceedings serve the function of adjudicating guilt or innocence, while also protecting the rights of the person charge.</u> See; **Powell v. Alabama**, 287 U.S. 45, 68-69, 53 S. Ct. 55, 77 L. Ed. 158 (1932)("The defendant requires the guiding hand of counsel at every step in the proceedings against him. **Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence."**) Effective trial counsel also preserves claims to be considered on Appeal, see; Fed. R. Crim. Proc. 52(b), (132 S. Ct. 1318) and in Federal Habeas proceedings, **Edwards v. Carpenter**, 529 U.S. 446, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000). As the record in this case clearly establishes, the petitioner's counsel was both Defficient and Constitutional Ineffective.

**2)** The Supreme Court and the Fifth Circuit have both confirmed that a guilty plea must be a voluntary, knowing and an intelligent act <u>"done with sufficient awareness of the relevant circumstances and likely consequences."</u> **Brady v. United States**, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). Courts must consider and investigate all relevant circumstances when determining whether a plea was voluntary or involuntary. **Pleas are clearly involuntary when induced by threats, improper promises, deception, negligence or misrepresentation.** See United States v. Amaya, 111 F. 3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving <u>"real notice of the true nature of the charge against him, the first and most universally recognized requirement of Due Process."</u> **Bousley.v. United States**, 523 U.S. 614, 618, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)). **"A plea is invalid if the defendant does not understand the nature of the Constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilty."** **James v. Cain**, 56 F. 3d 662, 666 (5th Cir. 1995)(citing **Henderson v. Morgan**, 426 U.S. 637, 645 n. 13, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976)).

**3)** Furthermore if defense counsel fails to provide competent advice, fails to investigate or inform his or her client that a motion could result in a total acquittal of the charges, is it the defendant that should have known the defence options and the complexities of law or the possible motion options that exist, or is the advice given to the defendant so flawed that the advice is both ineffective, and as a result, open to attack by the defendant, and redress or vacation by the Court.

**4)** The United States Supreme Court case of **Kimmelman v. Robinson,** S. Ct. 91 L. Ed. 2d 305, 477 U.S. 365; of June 26, 1986, is also helpful in regards to the petitioner's claims, as it explains the fundamental rights of a petitioner, when defence counsel's failure, to make a timely suppression motion is the primary manifestation of incompetence and the source of prejudice advanced by the petitioner.

**5)** Although it is frequently invoked in criminal trials, the Fourth Amendment is not a trial right; the protection it affords against governmental intrusion into one's home and affairs pertains to all citizens. The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure. See **Katz v. United States,** 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). In order to prevail, the complainant need prove only that the search or seizure was illegal and that it violated his reasonable expectation of privacy in the item or place at issue. See **Rawlings v. Kentucky,** 448 U.S 98, 104, 65 L. Ed. 2d 633, 100 S. Ct. (1980).

**6)** The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process. See **Gideon v. Wainwright,** 372 U.S. 335, 344 L. Ed. 2d 799, 83 S. Ct. 792, 23 Ohio Ops 2d 258, 93 ALR 2d 733 (1963). The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. See **Strickland v. Washington,** 446 U.S., at 686, 80 L. Ed. 2d 674, 104 S. Ct. 2052; **United States v. Cronic,** 466 U.S. 648, 655-57, 80 L. ed. 2d 657, 104 S. Ct. 2039 (1984). **In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness,** Strickland, 466 U.S. at 688, 80 L. Ed. 2d 674, 104 S. Ct. 2052, **and that there exist a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.** Id., at 694, 80 L. ed. 2d 674, 104 S. Ct. 2052. Where defense counsel's failure to litigate a Fourth Amendment claim

14

competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment Claim is Meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

**7) The right of an accused to counsel is beyond question a fundamental right.** See,**Gideon**, 372 U.S., at 344, 9 L. Ed. 2d 799, 83 S. Ct. 792, 23 Ohio Ops 2d, 258, 93 ALR 2d 733 ("The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours.") Without effective counsel the right to a fair trial itself would be of little consequence, **Cronic, Supra**, at 653, 80 L. Ed 2d 657, 104 S. Ct. 2039; **United States v. Ash**, 413 U.S. 300, 307-308, 37 L. Ed. 2d 619, 93 S. Ct. 2568 (1973); **Argersinger v. Hamlin**, 407 U.S. 25, 31-32, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972); **Gideon, Supra**, at 343-345, 9L. Ed. 2d 799, 83 S. Ct. 792, 23 Ohio OPs 2d 258, 93 ALR 2d 733; **Johnson v. Zerbst**, 304 U.S. 458, 462-463, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 ALR 357 (1938); **Powell v. Alabama**, 287 U.S. 45, 68-69, 77 L. Ed. 158, 53 S. Ct. 55, 84 ALR 527 (1932), for it is through counsel that the accused secures his other rights. **Maine v. Moulton**, 474 U.S. 159, 168-170, 88 L. Ed. 2d 481, 106 S. Ct. 477 (1985); see also, **Schaefer, Federalism and State Criminal Procedure,** 70 Harv L. Rev. 1, 8 (1956)("Of all the rights that an accused person has, the right to be presented by counsel is by far the most persuasive for it affects his ability to assert any other rights he may have.") **The Constitutional guarantee of counsel, however, "cannot be satisfied by mere formal appoinment," Avery v. Alabama**, 308 U.S. 444, 446, 84 L. Ed. 377, 60 S. Ct. 321 (1940). **"An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." Strickland, Supra**, at 685, 80 L. Ed. 2d 674, 104 S. Ct. 2052. **In other words, the right to counsel is the right to effective assistance of counsel. Evitts v. Lucey**, 469 U.S. 387, 395-396, 83 L. Ed. 2d 821, 105 S. Ct. 830 (1985); **Strickland, Supra,** at 686, 80 L. Ed. 2d 674, 104 S. Ct. 2052; **Cronic**, 466 U.S. at 654, 80 L. Ed. 657, 104 S. Ct. 2039; **Cuyler v. Sullivan**, 446 U.S. 335, 344, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980); **McMann v. Richardson**, 397 U.S. 759, 771 n. 14, 25 L. Ed. 2d 763, 90 S. Ct. 1441 (1970).

**8)** Because collateralreview will frequently be the only means through which an accused can effectuate the right to counsel, restricting the litigation of some Sixth Amendment claims trial and direct review would seriously interfere with an accused's right to effective representation. A layman will ordinarily be unable to recognize counsel's errors and to evaluate counsel's professional

performance, cf. **Powell v. Alabama,** supra, at 69, 77 L. Ed. 158, 53 S. Ct. 55, 84 ALR 527; consequently a criminal defendant will rarely know that he has not been represented competently until after trial or appeal, usually when he consults another lawyer about his case. Indeed, an accused will often not realize that he has a Meritorious ineffectiveness claim until he begins collateral review proceedings, particularly if he retained trial counsel on Direct Appeal.

**9)** As the Supreme Court stated in **Kimmelman v. Robinson,** were we to extend **Stone** and hold that criminal defendants may not raise ineffective-assistance claims that are based primarily on incompetent handling of Fourth Amendment issues on Federal Habeas, we would denied most defendants whose trial attorneys performed incompetently in this regard the opportunity to vindicate their right to effective trial counsel. We would deny all defendants whose appellate counsel performed inadequately with respect to Fourth Amendment issues the opportunity to protect their right to effective appellate counsel. See **Evitts,** supra. Thus, we cannot say, as the Court was able to say in **Stone,** that restriction of Federal Habeas review would not severely interfere with the protection of the Constitutional Right asserted by the Habeas petitioner (477 U.S. 379).

**10)** The Supreme Court also rejected the suggestion that criminal defendants should not be allowed to vindicate through Federal Habeas review their right to effective assistance of counsel where counsel's primary error is failure to make a timely request for the exclusion of illegally seized evidence-evidence which is "typically reliable and often the most probative information bearing on the guilt or innocence of the defendant." **Stone,** 428 U.S., at 490, 49 L. Ed. 2d 1067 96 S. ct. 3037. While we have recognized that the "'premise of our adversary system critical justice...that partisan advocacy...will best promote the ultimate objective that the guilty be convicted and the innocent go free'", **Evitts,** 469 U.S., at 394, 83 L. ed. 2d 821, 105 S. ct. 830, quoting **Herring v. New York,** 422 U.S. 853, 862, 45 L. Ed. 2d 593, 95 S. Ct. 2550 (1975), underlies and gives meaning to the right to effective assistance, **Cronic,** supra, at 655-56, 80 L. Ed. 2d 657, 104 S. Ct. 2039, we have never intimidated that the right to counsel is conditioned upon actual innocence. **"The Constitutional rights of a criminal defendants are granted to the innocent and the guilty alike.** Consequently, we decline to hold either that the guarantee of effective assistance of counsel belongs solely to the innocent or that it attaches only to matters affecting the determination of actual guilt. Furthermore, petitioners do not suggest that an ineffective-assistance claim asserted on direct review would fail for want of actual prejudice whenever counsel's primary error is failure to make a

meritorious objection to the admission of reliable evidence the exclusion of which might have affected the outcome of the proceeding. **"We decline to hold that the scope of the right to effective assistance of counsel is altered in this manner simply because the right is asserted on Federal Habeas review rather than on direct review."** See; Kimmelman v. Morrison, 477 U.S. 380.

11) In order to establish ineffective representation, the defendant must prove both incompetence and prejudice. 466 U.S., at 688, 80 L. Ed. 2d 674, 104 S. Ct. 2052. There is a strong presumption that counsel's performance falls within the "wide range of professional assistance," id., at 689, 80 L. Ed. 2d 674, 104 S. Ct. 2052; the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenge action was not sound strategy. Id., at 668-689, 80 L. Ed. 2d 674, 104 S. Ct. 2052. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. Id., at 689, 80 L. Ed. 2d 674, 104 S. Ct. 2052. The defendant shows that he was prejudice by his attorney's ineffectiveness by demonstrating that **"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."** Id., at 694, 80 L. Ed. 2d 674, 104 S. Ct. 2052. See also, id., at 695, 80 L. Ed. 2d 674, 104 S. Ct. 2052. **(Where a defendant challenges his conviction, he must show that there exists "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.")** And, in determining the existence Vel Non prejudice, the Court "must consider the totality of the evidence before the Judge or Jury."

12) In **Strickland the Supreme Court explained that;** "access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." 466 U.S., at 685, 80 L. Ed. 2d 674, 104 S. ct. 2052 (quoting **Adams v. United States Ex Rel. McMann,** 317 U.S. 269, 275, 276, 87 L. Ed. 268, 63 S. ct. 236, 143 ALR 435 (1942)). "Counsel...has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." 466 U.S., at 688, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Counsel's competence, however, is presumed, id., at 689, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and the defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenge action was not sound strategy. Id., at 688-89, 80 L. Ed. 2d 674, 104 S. ct. 2052. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the

time of the alleged error in and in light of all the circumstances. Id., at 689, 80 L. Ed. 2d 674, 104 S. Ct. 2052. In making the competency determination, the Court "should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." Id., at 690, 80 L. Ed. 2d 674, 104 S. Ct. 2052. **Because that testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies, we noted that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."**

**13)** The record in this case clearly reveals that the petitioner's attorney failed to file a timely suppression motion, not due to any strategic considerations. Counsel's failure cannot be based on "strategy," but on counsel's lack of performance. A complete lack of pretrial preparation puts at risk both the defendant's right to an ample opportunity to meet the case of the prosecution, id., at 685, 680 L. Ed. 2d 674, 104 S. Ct. 2052 (quoting **Adams, supra**, at 275, 87 L. Ed. 268, 63 S. Ct. 236, 143 ALR 435), and the reliability of the adversarial testing process. See 466 U.S.., at 688, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

## A) PLEA BARGAINING AND THE SIXTH AMENDMENT :

**1)** The Sixth Amendment Right to effective assistance of counsel clearly "extends to the plea-bargaining process." **Lafler v. Cooper**, 566 U.S. 156, 162, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). Therefore, before deciding whether to plead or go to trial, a criminal defendant is entitled to "the effective assistance of competent counsel." **McMann v. Richardson**, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); see also **Lafler**, 566 U.S. at 165 (the Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding, "including" pretrial critical stages **"where the defendant must take "critical decisions"** such as whether to accept a plea or go to trial); id., at 169 ("if a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it.") **Missouri v. Frye**, 566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. ed. 2d 379 (2012)(**"It is well settled that the right to the effective assistance of counsel applies to certain steps before trial."**) (citing **Argersinger v. Hamlin**, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972), entry of guilty plea)); id., at 143. ("Defense counsel has responsibilities in the plea bargaining process...that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages.") **Padilla v. Kentucky**, 599 U.S. 356, 370, 130 S. Ct. 1473,

176 L. Ed. 2d 284 (2010)(noting the "critical obligation of counsel to advise the client of the 'advantages and disadvantages of a plea agreement.")(quoting **Libretti v. United States**, 516 U.S. 29, 50-51, 116 S. Ct. 356, 133 L. Ed. 2d 271 (1995)); **VonMoltke v. Gillies**, U.S. 708, 721, 68 S. Ct. 316, 92 L. Ed. 309 (1948) (plurality opinion)(**"[A]ccused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered."**)

**2)** The two-part **Strickland** test also governs **"ineffective assistance claims arising out of the plea process." Hill v. Lockhart**, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). The prejudice inquiry <u>"focuses on whether counsel's Constitutionally ineffective performance, affected the outcome of the plea process."</u> Id., at 59; **Lafler**, 566 U.S. at 163, prejudice is shown where "the outcome of the plea process would have been different with competent advise."

**3) The petitioner had legal options that he did not know existed.** These legal options, his attorney was required by the Sixth Amendment to know, to investigate and to exercise, to the benefit of his client, yet counsel did nothing of the sort. **The petitioner suffered as a result of his former counsel's ineffectiveness not only were his Fourth and Sixth Amendment rights violated his substancive Due Process Rights were also violated.**

**4)** Had the petitioner's counsel suppressed the illegal search, illegal entry and all evidence found, there could be no connection of the defendant to the conspiracy. The testimony from the Government Agent Brian Finney (**See Sentencing Hearing Transcripts Page 18, Lines 12-14, and Page 19, Lines 1-11**) confirms as does the statement of co-defendant, Hector Rivera-Diaz, that an unknown 2nd hispanic male is in the apartment (**See Exhibit 2, Paragraph 11**). This testimony is enough to prove the petitioner is not that person, and it is also clear that the suppression of the search evidence would have definitely affected the Government's case against the petitioner, as it makes up all the central Government evidence against the petitioner.

**5)** As a result had suppression been attempted, and succesfully granted, (**as the motions success is a clear possible outcome**), the defendant could have succeeded in a trial and would have for certain gone to trial. (**See Exhibit 1, Paragraph 17**)

**B) THE INVOLUNTARY PLEA PROCESS:**

**1)** Rule 11 of the Federal Rules of Criminal Procedure, provides procedural

safeguards for assuring that guilty pleas are entered voluntarily and knowingly. But because we now have "for the most part a system of pleas not a system of trials." See **Lafler v. Cooper**, 566 U.S. 156, 170, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), it is today in the plea process incredibly critical that a plea be 100% clearly understood and completely voluntary and the only way that this can take place is when the attorney truthfully and with complete competence, explains all defensive options available to the defendant before the defendant waives the Constitutional protections and rights he may not understand he has as a fundamental safeguard.

2) The petitioner as stated in **Exhibit 1, Paragraph 8**, "his sworn under penalty of perjury statement," that he was never told about any type of Fourth Amendment Protections or for that matter, told that all evidence against him could and should have been suppressed. It is extremely clear, that counsel failed unconstitutionally to protect and assist the petitioner by not investigating the warrantless search of the apartment. **Perhaps counsel did not understand the Fourth Amendment, perhaps it was inconvenient for appointed counsel, to spend time investigating the evidence and filing motions, or perhaps it was simply negligence of some sort.** Regardless as the following case law clearly supports, the petitioner's guilty plea cannot stand as voluntarily made, intelligent or Constitutionally acceptable.

3) **Fundamental questions that this memorandum asks the Court to consider are:**
   i) Who has the responsibility of explaining to the accused a viable defense option;
   ii) Is the accused capable of waiving a Constitutional Right or protection, that he does not understand as a result of counsel's negligence or ineffective assistance, he may have?
   iii) Is the accused responsible for knowing every aspect of the law and his Constitutional Rights during the prosecution process, or is the Sixth, Fourth and Fourteenth Amendment the attorneys responsibility to understand, and use to protect the accused?
   iv) Is it possible and then Constitutionally permissible for the accused to waive a trial and Constitutional right unknowingly.
   v) Does the waiving of those rights make the plea process and the defendant's answers in Court to the Judge, intelligent knowingly and voluntary obtained?

4) **It is not the petitioner's responsibility to act as "counsel" to be the**

**effective attorney, who's obligation rests with the understanding of the Strickland principals and the right to effective assistance of counsel.** Can a neglegently advised defendant, waive a Constitutional protection or group of Constitutional protections, he does not know he has as a result of his attorney's negligence.

**5)** In discussing the incentives, structural constraines and psychological influences that can lead to a defendants involuntary pleading guilty, **Stephanos Bibas** wrote **"In Plea Bargainings Role in Wrongful Convictions,"** that the plea process is no more foolproof than trials are; **"Examining Wrongful Convictions,"** pages 157-162 (2014).

**6)** Furthermore the Constitutional protection of Due Process Rights, apply at the plea and plea hearings phase, most fundamentally the requirement that a plea be knowing and fully voluntary, see **McCarthy v. United States**, 394 U.S. 459, 466, 89 S. ct. 1166, 22 L. Ed. 2d 418 (1969). **Brady v. United States**, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). Quoting **Boykin v. Alabama**, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 23 L. ED. 2d 274 (1969), stated that, **"A plea is Constitutionally valid only to the extent it is 'voluntary' and 'intelligent',"** (quoting **Brady** at 397 U.S., at 748).(**See Exhibit 1, Paragraph 18**) the petitioner's statement highlights his willingness to go to trial had he been told of the Fourth Amendment options to suppress as an option defensively, that could have resulted in a full and complete acquittal.

**7)** Further a guilty plea, in order to be valid, must be both valid and voluntary that is, must be a voluntary and intelligent choice among alternative courses of action open to criminal defendant-because such plea constitutes waiver of three Constitutional rights: right to jury, right to confront one's accusers, and privilege against self-incrimination. **Parker v. Raley** (1992 US) 121 L. Ed. 2d 391, 113 S. Ct. 517. Given seriousness of defendant's entry to guilty plea, Federal Constitution insists, among other things, that (1) such plea be voluntary, and (2) defendant must make related waivers knowingly, intelligently, and with sufficient awareness of relevant circumstances and likely consequences. **United States v. Ruiz** (2002 US) 153 L. Ed. 2d 586, 122 S. Ct. 2450.

**8)** The petitioner is asking the Court to consider fundamentally, that waiving a Constitutional Right that a defendant does not know he has as a result of erroneous legal advice of counsel, cannot be voluntary, intelligently and knowingly made. It is simply impossible to voluntarily waive intelligently a right that

you do not know exists, when the only reason that the defendant does not know the Fourth Amendment right is an option, is because of his or her's attorneys ineffective assistance either for failure to investigate the facts, complete negligence, incompetence, or unfortunately deceit, misrepresentation, even deception where an attorney by preventing a defendant from acquiring information which would, affect his judgment of a specific transaction, that transaction was the guilty plea process, resulting in a complete miscarriage of justice. Section VI of this memorandum explains the viability of the Fourth Amendment as a clear and meritorious defence strategy.

## C) CASE LAW OVERWHELMINGLY SUPPORTS THAT THE PETITIONER'S PLEA WAS INVOLUNTARY OBTAINED:

**1)** The record contains a declaration by the petitioner, sworn under penalty of perjury that he would not pled guilty if his counsel had informed him of the viability of a suppression motion. Indeed the petitioner as soon as he became aware of the Fourth Amendment that his former counsel neglected to inform him of, he asked the Court to replace her. (**See Exhibit 1, Paragraph 18**). Furhtermore the petitioner in **Exhibit 1, Paragraph 13,** makes reference to the fact that he wanted to somehow, withdraw his guilty plea, although at the juncture in the proceedings, that option had expired.

**2)** Several cases support the fact that a failure of counsel to file a suppression motion can support a claim of ineffective assistance of counsel. One of those cases, **Morris v. Thaler,** 425 Fed. Appx 415 (5th Cir. 2011) stated that, "A petitioner was permitted to challenge his guilty plea as involuntary based upon ineffective assistance of counsel when his attorney failed to file a motion to suppress the central evidence in the prosecution's case," see **United States v. Cavitt,** 550 F. 3d 430 (5th Cir. 2008), (petitioner could challenge guilty as involuntary based upon counsel's failure to file a motion to suppress).

**3)** Here in this case we have a defendant who is told to plead guilty and does so, not knowing that all the evidence in the apartment, including his presence there as an overnight guest, could have and should have been suppressed. The result of counsel's negligence is a complete miscarriage of justice, a wrongfully obtained plea and conviction.

**4)** Apart from **Morris v. Thaler** and **United States v. Cavitt,** the Supreme Court case of **Hill v. Lockhart,** is often quoted and also somewhat instructive; "the longstanding test for determining the validity of a guilty plea is, **whether**

22

the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." **North Carolina v. Alford**, 400 U.S. 25, 31, 27 L. Ed. 2d 162, 191 S. Ct. 160, 56 Ohio Ops 2d 85 (1970); see **Boykin v. Alabama**, 395 U.S. 238, 242, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969); **Machibroda v. United States**, 368 U.S. 487, 493, 7 L. Ed. 2d 473, 82 S. Ct. 510 (1962).

5) The petitioner's **"CHOICE AMONG THE ALTERNATIVE COURSES OF ACTION OPEN TO THE DEFENDANT,"** simply did not exists because of counsel's failure and negligence. As a result, there was no informed choice, no intelligent plea or voluntary plea. The plea was obtained by ineffective assistance of counsel and by all standards, not a sound trial or defence strategy.

6) In the Memorandum Section VI the petitioner will explain in detail for the first time, the Meritorious Fourth Amendment claims. The facts surrounding the illegal search are all clear and 100% verifiable. As a result there is but one conclusion for the Court to reach, that being, counsel was clearly ineffective, deficient or deceitful, perhaps negligent, but for whatever the reason this motion and the Court discovers, the fact that all the evidence against the petitioner would have and should have been suppressed, is fundamentally a viable defence option that counsel was; (1) required to understand and pursue as a defence, and (2) was without any possible doubt, required to investigate, inform and discuss with the petitioner. **Petitioner's former counsel did not of this, all of which was then outside the control or knowledge of the petitioner. It was clear Constitutional Injury, and as a result, cannot stand.**

7) **In United States v. Cavitt**, 550 F. 3d 430, 440 (5th Cir. 2008). Is also helpful by confirming the following; **"if the quality of counsels service falls below a certain minimum level, the clients guilty plea cannot be knowing and voluntarily because it will not represent an informed choice."**

8) **Brock v. United States**, July 10, 2017, 5th Circuit, also addressed similar issues as the petitioner's. The Court granted **Brock's** motion to vacate. In **Brock**, civil no. SA-17-CA-00272-OLG, [SA-12-CR-282-OLG] (LEXIS 225319); the Court explained the following considerations regarding the voluntary plea process; **"this includes claims of ineffective assistance of counsel except insofar as the effectiveness is alleged to have rendered the guilty plea involuntary."** Quoting **United States v. Cavitt**, 550 F. 3d 430, 441 (5th Cir. 2008), "it is well-established that a valid guilty plea waives all non-jurisdictional defects, including an ineffective assistance of counsel claim, **unless the ineffective**

assistance claim affects the voluntariness of the plea." **Wells v. Thaler**, 460
Fed. Appx 303, 309 (5th Cir. 2012).

9) With respect to a Constitutionally valid guilty plea, the **Brock Court** explained
"**to be Constitutionally valid, a guilty plea must be intelligent and voluntary.**"
Quoting **Bousley v. United States**, 523 U.S. 614, 618 (1998). The Brock Court
explained further that; "to enter a knowing and voluntary guilty plea, the de-
fendant must have a, full understanding of what the plea connotes and of its
consequences." See **United States v. Urias-Marrufo**, 744 F. 3d 361, 366 (5th Cir.
2014)(quoting **Boykin v. Alabama**, 395 U.S. 238, 244 (1969)). The Court explained,
"the defendant must have notice of the nature of the charges against him, must
understand the consequences of his plea, **and must understand the nature of the
Constitutional protections he is waiving.**" Although the petitioner entered a
guilty plea as most of all defendants in our "System of Pleas" do, he could not
have been somehow responsible in doing so, for counsel's negligence with respect
to the viability as a defence, of the Fourth Amendment Rights that the petitioner
was Constitutionally entitled to. The Brock Court also stated; "a guilty plea
affects a forfeiture of certain Constitutional claims, <u>if the plea is entered
knowingly and voluntarily and with competent assistance and advice by defence
counsel.</u>" **United States v. Batama**, 788 F. 3d 166, 176 (5th Cir. 2015). "The
ultimate question must always be, was the plea a voluntary and intelligent act
of the defendant?" **McMann v. Richardson**, 397 U.S. 759, 772 (1970). The petitioner
in quoting **Justice Primomo**, in Brock concludes this section of the Memorandum in
Support of his 2255 motion with the following; "**an error by counsel, even if
professionally unreasonable, must be prejudice to the defence in order to consti-
tute ineffective assistance under the Constitution.**" **Strickland**, 466 U.S. at 692.
"The defendant must show that there is a reasonable probability that, but for
counsel's unrpofessional errors, the result of the proceeding would have been
different." "A reasonable probability is a probability sufficient to undermine
confidence in theoutcome." In order to prove prejudice for an ineffective assist-
ance of counsel claim in the context of a guilty plea, the defendant must show
that there is a **"REASONABLE PROBABILITY"** that, but for counsel's errors, he would
not have pleaded guilty and would have insisted on going to trial." See **Hill v.
Lockhart**, 474 U.S. 52, 59 (1985); **United States v. Juarez**, 672 F. 3d 301, 385
(5th Cir. 2012).

10) Clearly here in the petitioner's declaration (**See Exhibit 1, Paragraph 18**)
he would have insisted on going to trial because if he had known the search and
entry into the apartment were Constitutionally in violation of the Fourth

Amendment and 100% illegal, and that he also had standing as an overnight guest, and a Viable Meritorious option to suppress everything found, **he would have, as would have any defendant properly advised in the same situation, insisted upon filing the suppression motion and going to trial.**

## D) DUE PROCESS AND THE REQUIREMENT THAT THE PLEA BE INTELLIGENTLY AND VOLUNTARILY MADE:

**1)** It is also well settled that in order to satisfy the requirement of Due Process, a guilty plea in a criminal prosecution must be entirely voluntary. The requirement that a guilty plea be made intelligently and voluntarily to be valid, has long been recognized by the Supreme Court. Thus in the following cases, the making of the plea unintelligently has been held or recognized by the Supreme Court, either expressly or by necessary implication, that the voluntariness of a defendant's guilty plea was a determinative factor insofar as the validity of the plea was concerned. **Kercheval v. United States** (1927) 274 U.S. 220, 71 L. Ed. 1009, 47 S. Ct. 582; **Chamber v. Florida,** (1940) 309 U.S. 227, 84 L. Ed. 716, 60 S. Ct. 472; **Walker v. Johnston** (1941) 312 U.S. 275, 85 L. Ed. 830, 61 S. Ct. 574: **Smith v. O'Grady** (1941) 312 U.S. 329, 85 L. Ed. 859, 61 S. Ct.; **Waley v. Johnston** (1942) 316 U.S. 101, 86 L. Ed. 1302, 62 S. Ct. 964; **Wells v. United States** (1943) 318 U.S. 257, 87 L. Ed. 746, 63 S. Ct. 582; **Hawk v. Olson** (1945) 326 U.S. 271, 90 L. Ed. 61, 66 S. Ct. 116; **Woods v. Niersheimer** (1946) 328 U.S. 211, 90 L. Ed. 1177, 66 S. Ct. 996; **Von Moltke v. Gillies** (1948) 332 U.S. 708, 92 L. Ed. 309, 68 S. Ct. 316; **Townsend v. Burke** (1948) 334 U.S. 736, 92 L. Ed. 1690, 68 S. Ct. 1252; **Quicksall v. Michigan** (1950) 339 U.S. 660, 94 L. Ed. 1188, 70 S. Ct. 910, reh den 340 U.S. 846, 95 L. Ed. 620, 71 S. Ct. 13; **Moore v. Michigan** (1957) 335 U.S. 155, 2 L. Ed. 2d 167, 78 S. Ct. 191; **Machibroda v. United States** (1962) 368 U.S. 487, 7 L. Ed. 2d 473, 82 S. Ct. 510; **Mempa v. Ray** (1967) 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254; **United States v. Jackson** (1968) 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209; **McCarthy v. United States** (1969) 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166; **Boykin v. Alabama** (1969) 395 U.S. 238, 23 L. Ed. 2d 272, 89 S. Ct. 1709; **Brady v. United States** (1970) 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463; **McMann v. Richardson** (1970) 397 U.S. 759, 25 L. Ed. 2d 763, 90 S. Ct. 1441; **Parker v. North Carolina** (1970) 397 U.S. 790, 25 L. Ed. 2d 785, 90 S. Ct. 1458; **North Carolina v. Alford** (1970) 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160. **Williams v. Kaiser** (1945) 323 U.S. 471, 89 L. Ed. 398, 65 S. Ct. 363; **Carter v. Illinois** (1946) 329 U.S. 173, 91 L. Ed. 172, S. Ct. 216; **DeMeerleer v. Michigan** (1947) 329 U.S. 663, 91 L. Ed. 584, 67 S. Ct. 596; **Foster v. Illinois** (1947) 332 U.S. 134, 91 L. Ed. 1955, 67 S. Ct. 1716;

**Bute v. Illinois** (1948) 333 U.S. 640, 92 L. Ed. 986, 68 S. Ct. 763; **Paterno v. Lyons** (1948) 334 U.S. 314, 92 L. Ed. 1409, 68 S. Ct. 1044; **Uveges v. Pennsylvania** (1948) 335 U.S. 437, 93 L. Ed. 127, 69 S. Ct. 184; **Palmer v. Ashe** (1951) 342 U.S. 134, 96 L. Ed. 154, 72 S. Ct. 191; **Pennsylvania Ex Rel. Herman v. Claudyk** (1956) 350 U.S. 116, 100 L. Ed. 126, 76 S. Ct. 223. **The Supreme Court said that on timely application it would vacate a plea of guilty shown to have been given through ignorance or inadvertence (NOT ON PURPOSE; ACCIDENTAL). See VonMoltke v. Gillies (1948),** where, in the concurring opinion of **Justice Frankfurter,** joined by **Justice Jackson,** it was observed that a plea of guilty under the influence of unintentionally erroneous advice cannot be regarded as having been made on the necessary basis of informed, self-determined choice.

**2)** Thus, after noting that the requirement that a plea of guilty must be volun-tary to be valid has long been recognized, and that the voluntariness of a guilty plea can be determined only by considering all of the relevant circum-stances surrounding it. The Court in **Brady v. United States** (1970) 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463, said that the standard as to the volun-tariness of guilty pleas must be essentially that a plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the Court,prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harrasment), **MIS-REPRESENTATION** (including unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's bussiness (for example, bribes).

Some of the questions for **an evidentiary hearing are;** (1) could the plea have been knowingly made, and (2) was the attorney for the defendant aware of the Fourth Amendment violation defence as a Viable option and if so; (3) was the attorney negligent because the Fourth Amendment claim had both substance and merit or; (4) was the attorney's choice not to investigate, consider, or discuss the Fourth Amendment defence strategy, **truly Constitutionally acceptable, effective assistance of counsel** and if the Court finds to be possible; (5) **was counsel's performance compliant Constitutionally with Strickland v. Washington, Hill v. Lockhart, VonMoltke v. Gillies,** and other instructive Supreme Court rulings that help explain this type of prejudice to a defendant.

**3)** Clearly the record and Memorandum evidence plus the petitioner's statement all confirm that his plea was not intelligently made. It simply cannot stand as Constitutional.

**E) GUILTY PLEAS BY MISREPRESENTATION DECEPTION, AND/OR NEGLIGENCE:**

**1) In some cases the Supreme Court has held or recognized that where a defendant is deceived, misled, or tricked into pleading guilty, such a plea is invalid. The Supreme Court has held that in these cases, where being misled is at issue that the guilty pleas could not stand.** Yet there are a few cases, (and none that the petitioner could access from the Oakdale II law resources), that explained case law where the counsel was possibly deceptive or simply took the position that the extra work by an appointed attorney in filing a motion as a defence strategy, **was financially not viable,** for the appointed defence counsel to undertake.

**2)** In the first section of this motion's Memorandum we addressed on Page 3, Paragraph 4, how, "the same critics, [of plea bargaining], suggest that defence attorneys like other people desire money and that for any attorney there are two ways to become financially successful." These comments go on to explain that attorneys willfully become negligent by pleading cases where the most zelously performing defender, or any who fully investigated would recognize the viability of suppression motion and file it. The attorney, is not Judge, and if a motion was a **"Viable Meritorious," as this case clearly does, counsel should have and was required to pursue it, investigate and zelously fight for that Constitutional Rights of the client. Unfortunately this did not take place.**

**3)** Had there been a search warrant, a consent form signed, consent from an owner, a resident, or even had the agents knocked and announced their entry, the Government which has the duty of establishing consent (because they neglected to get a search warrant), could possibly have an argument with some small amount of merit. The Constitution although clearly states they do not.

**4)** At this juncture both the Sixth Amendment and Due Process are activated because if the attorney did not file the motion to suppress the evidence due to lack of funding, or even attorney negligence, the damages for not doing so remain as clear and overwhelming as Constitutional Injury to the petitioner. Thus the Court should order an evidentiary hearing to determined exactly why counsel failed to consider the obvious illegal warrantless search. Was it intentional error or was it clear negligence. These cases support the argument of deception, tricks or negligence considering if a plea is invalid. **Walker v. Johnston** (1941), **Smith v. O'Grady** (1941), **Wells v. United States** (1943), **Hawk v. Olson** (1945), **VonMoltke v. Gillies** (1948), **Quicksall v. Michigan** (1950), **Brady v. United States** (1970) **Parker v. North Carolina** (1970).

## F) THE INVOLUNTARY GUILTY PLEA ARGUMENT CONCLUSION:

**1)** The petitioner urges the Court to vacate or alternatively, order an evidentiary hearing to determine why counsel failed to investigate, discuss with the petitioner or file the motion to suppress the fruits of the illegal search. The Fifth Circuit and the Supreme Court have consistently stressed that the plea process must be one that is intelligent and voluntarily obtained, the petitioner's was based upon overwhelming evidence, clearly was not.

**2)** The **Strickland** test also applies in the context of a guilty plea. **Hill v. Lockhart,** 474 U.S. 52, 57-58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). **A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'REASONABLY COMPETENT ADVICE'."** Cuyler v. Sullivan, 466 U.S. 335, 344, 64 L. Ed. 2d 333, 100 S. ct. 1708 (1980)(quoting **McMann v. Richardson**, 397 U.S. 759, 770-71, 90 S. ct. 1441, 25 L. Ed. 2d 763 (1970)). One of the questions that needs to be answered through **this motion and by the Court, that may only be accomplished through an evidentiary hearing is, "why did counsel forego the opportunity to suppress the illegal search of the apartment, and why did counsel not inform the petitioner of his Constitutional Right to suppress the illegal search, and all the evidence obtained through it?** This was a fundamental error of counsel causing a complete miscarriage of justice.

**3)** If it is shown that a reasonable probability exists that a different outcome would have been obtained, had the attorney adequately addressed the issue in this case what is clearly a **Meritorious Fourth Amendment, illegal search claim, and that a different outcome if the issue had been pursued,** would be not only feasable, but was also highly likely, then that attorney's deficient performance led to a fundamentally unfair and unreliable result. **United States v. Dovalina**, 262 F. 3d 472, 474-75, (5th Cir. 2001).

**4)** A plea induced by misrepresentation can simply not, be voluntarily obtained. The petitoner's argument with this regard is quite clear and based upon a few headline facts:

  i) The agents although having the option to do so, did not request a search warrant;

 ii) The agents found a key in a 19 year old Hector Rivera-Diaz's pocket after he was arrested; they told him they would set him free to return to Mexico, (as he was new to the USA having been here 14 days), if he just told them where the apartment was. Mr. Rivera-Diaz is 19 with 8 grade education;

iii) Mr. Rivera-Diaz did tell agents where the apartment was, but did not have

common authority over the apartment as he only went to the apartment for
**two commercial transactions;** to pick up drugs; and he did not live there
or even stay there; the agents knew this as Mr. Rivera-Diaz told them this
making his consent clearly invalid. **See Exhibit 2, Paragraph 11;**

iv) Mr. Rivera-Diaz statement under penalty of perjury clearly states he did
not give the agents **ANY TYPE OF CONSENT TO SEARCH, OR SEARCH AUTHORITY;**

v) Finally agents took the key, entered without knocking or announcing their
presence at the front door. They entered the Dallas apartment having no
idea if their stelth entry would trigger violence, would capture anyone
or would secure more drugs. They could have and should have sought Judicial
search warrant approval, as they had the option to do so.

**5)** The record here is very clear that there was a warrantless entry into an apart-
ment that could have been done by search warrant. These is a very clear argument
that any warrantless entry into a residence activates Fourth Amendment Consider-
ations. See **Kirk v Louisiana,** 122 S. Ct. 2458, 153 L. Ed. 2d 599 (2002); "Our
cases have firmly established that the basic principal of Fourth Amendment law
searches and seizures inside a home without a warrant are presumptively unreason-
able." It is not only feasable but also highly likely that a substancive Fourth
Amendment Violation took place. The following Section VI details directly what
the Supreme Court and the Fifth Circuit consider as viable Fourth Amendment claims,
case law and Constitutional guidance.

**6)** In conclusion to the fact that a guilty plea cannot be voluntary or intelli-
gently made when defence counsel fails to inform the defendant that he had a
logical suppression motion option, **"A Meritoriou Fourth Amendment Claim,"** and
also failed to investigate it and then, file a suppression motion, the case law
below explains how the plea process and, **"the contract with counsel to be effec-
tive,"** was broken by counsel for failing to effectively protect her client, "the
petitioner," or alternatively by negligence or even misrepresentation, failing
to do what the Constitution guarantess, that being, to be Constitutionally effec-
tive counsel. This break in the contract occured before the plea was accepted by
the Court.

**7)** In **Morris v. Thaler,** 425 Fed. Appx 415 (5th Cir. 2011), the petitioner was
permitted to challenge his guilty plea as involuntary based upon ineffective
assistance of counsel when his attorney failed to file a motion to suppress the
central evidence in the prosecution's case. In summary a Constitutional valid
guilty plea must be knowingly, voluntarily and intelligent made.

**United States v. Hernandez**, 234 F. 3d 252, 254 (5th Cir. 2000), yet in the petitioner's case it simply could not have been because if told by counsel there was an option to suppress all the evidence connecting him to his conviction, any defendant would insist on suppression and of course the trial option. As the petitioner's statement explains he would have insisted on going to trial had counsel explained the suppression option. Clearly suppression of the central evidence in the conviction of the petitioner would lead any defendant to the trial decision. **See Exhibit 1, Paragraph 18.**

**8)** The petitioner's counsel had a duty to independently research the law and investigate the facts surrounding the warrantless search of the apartment. This should have been very obvious to counsel. Why this did not take place is today, still unknown and cannot be sound trial strategy.

**9)** With respect to the deficiency prong of the **Strickland test, "the first prong-constitutional deficiency-is necessarily linked to the practice and expectations of the legal community." Padilla v. Kentucky**, 672 F. 3d 388, 130 S. Ct. 1473, 1482, 176 L. Ed. 2d 284 (2010)(citing **Strickland**, 466 U.S. at 688). "We long have recognized that prevailing norms of practice as reflected in American Bar Association Standards...are guides to determining what is reasonable." Id., at 1482 (citing various Supreme Court cases).

**10)** For certain the petitioner had a reasonably probability of a Meritorious Fourth Amendment challenge to all central evidence in the 21 years 10 months sentence. Why it was not pursued perhaps the evidentiary hearing will ascertain. Regardless as to why counsel's errors took place, the fact remain they did and the result was the involuntary made guilty plea. There is no doubt an error took place and there is no doubt the error was prejudicial having a profound effect on the outcome on the conviction that today might not exist had the petitioner's counsel performed as required by the Sixth Amendment and suppressed all the evidence from the illegal and warrantless search. The petitioner would not of course pled guilty with all the evidence to convict suppressed.

## VI. FOURTH AMENDMENT ARGUMENT :

**THE PETITIONER'S MERITORIOUS FOURTH AMENDMENT ARGUMENTS EXPLAIN
THE FOLLOWING FUNDAMENTAL ISSUES:**

## A) A MERITORIOUS FOURTH AMENDMENT VIOLATION :

The **Supreme Court** has numerous cases that, **"INSTRUCT CLEARLY,"** that searches
and seizures inside a home without a warrant are presumptively unreasonable.
The Founding Generation understood, that by securing their property, the Fourth
Amendment would often protect their privacy as well. See Boya Supra at 630, 6 S.
Ct. 524, 29 L. Ed. 749, explaining that searches of houses invade, **"the privacies
of life." Wilkes v. Wood** 19 HOW St. Yr. 1153, 1154 (CP 1763). Also see Supreme
Court: **Groh v. Ramirez**, 540 U.S. 551, 124 S. Ct. 1284, 1290, 157 L. Ed. 2d 1068,
1079, 2004 U.S. LEXIS 1624, *15-16 (2004). "Our cases have firmly established
that the basic principal of Fourth Amendment law searches and seizures inside a
home without a warrant are presumptively unreasonable." (internal quote marks
ommitted): **Kirk v. Louisiana**, 536 U.S. 635, 638, 122 S. Ct. 2458, 2459, 153 L.
Ed. 2d 599, 602 (2002)(per curiam). ("Absent exigent circumstances that threshold
[of the home] may not reasonably be crossed without warrant.") (internal quote
marks ommitted.) **Payton v. New York**, 445 U.S. 573, 587-88, 100 S. Ct. 1371, 63
L. Ed. 2d 639 (1980). **("Absent exigent circumstances, a warrantless entry to
search for weapons or contraband is unconstitutional even when a felony has been
committed and there is probable cause to believe that incriminating evidence
will be found within.") Terry v. Ohio**, 392 U.S. 1, 20, 88 S. Ct. 1868, 20 L. Ed.
2d 889, 44 Ohio Op. 2d, 383 (1968), **("Police must whenever practible, obtain
advanced judicial approval of searches and seizures through the warrant procedure.")
U.S. Supreme Court: Groh v. Ramirez**, 540 U.S. 551, 124 S. Ct. 1284, 1294, 157 L.
Ed. 2d, 1068, 1083, 2004 **(warrantless search or seizure in home may be justified
by, "Consent or Exigency.")** The Court further clarifies issues related to search
issues about what is actual voluntary consent in the case law listed below.
**Schneckloth v. Bustamonte**, 412 U.S. 218, 248, 93 S. Ct. 2041, 2059, 36 L. Ed. 2d
854, 875 (1973). **"We hold that only when the subject of a search is not incustody
and the State attempts to justify a search on the basis of his consent, the Fourth
Amendment and the Fourteenth Amendment require that it demonstrates that the
consent was infact voluntary given." Illinois v. Rodriguez**, 497 U.S. 177, 181,
110 S. Ct. 2793, 2797, 111 L. Ed. 148, 156 (1990).

## B) COUNSEL'S FOURTH AMENDMENT OBLIGATIONS:

It is impossible to without an evidentiary hearing and further developing the
**"case record,"** to understand counsel's negligence in failing to file the Fourth
Amendment suppression motion, or to investigate and consult with the petitioner
regarding the Fourth Amendment injury of the petitioner. The record is clear
although, with several issues. Some are more alarming than others but **"The First
Fundamental Red Flag,"** counsel should have investigated further the warrantless
entry and seizure of the petitioner, and the search of the apartment. **The warrant-
less and silent entrance into the apartment was even outside the ancient knock
and announce rule and these incredible issues should have convinced counsel to
investigate further.**

The lawyer must; actually and substantially assist his client in deciding whether
to plead guilty. It is counsel's job to provide the accused with an understanding
of the law in relation to the facts. In this case that duty required that the
petitioner's counsel Ms. Lederman not only pursue any Constitutional defense that
was both Obvious and Meritorious, but also counsel had a clear duty to inform the
petitioner of the Fourth Amendment protections before entering into the guilty
plea process. The Fifth Circuit in **Herring v. Estelle,** 491, F. 2d 125, 128 (5th
Cir. 1974), stated that, **"it is the lawyer's duty to ascertain if the plea is
entered voluntarily and knowingly."** With respect to a Fourth Amendment argument,
counsel's advice was required under **Strickland** to permit the accused, to make an
informed, intelligent and concious choice. In other words, if the quality of
counsel's advice, service or failure to investigate, falls below a certain minimal
level, the client's plea, factual resume, and answers to the Judge questions at
the plea hearing, cannot be knowing and voluntarily made because it will not re-
present an informed intelligent choice. Furthermore any lawyer who is unfamiliar
with the facts in this case, Fourth and Fourteenth Amendment law, cannot meet
that minimal level mentioned above. Accordingly Ms. Lederman, as the following
evidence explains and the record confirms, could not have effectively concluded
that failure to file a motion to suppress was a **"strategic, concious, investigated
and informed," choice.** See **Strickland,** 466 U.S. at 689. Nor should this Court
assume that counsel Ms. Lederman, was 100% **"familiar with the relevant facts of
law,"** in advising the petitioner to enter a guilty plea. **Herring v. Estelle,** 491
F. 2d at 128.

## C) AN OVERNIGHT GUEST'S FOURTH AMENDMENT STANDING:

The petitioner was an overnight guest at an apartment in Dallas arriving

**violate his Fourth Amendment rights.** As the next section proves Mr. Rivera-Diaz did not have Fourth Amendment standing. As a result of this factor and others further explained below, he could not of provided consent to search the apartment, and as the record's history of the events confirms, the arresting officers did know this or should have known this. An evidentiary hearing with the officers present possibly would explain their decision to conduct the warrantless search.

Furthermore the Fourth Amendment extends to overnight guests because "holding that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the every day expectations of privacy we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society" (quotation ommitted).

### D. PSYCHOLOGICALLY COERCED INVALID NON-STANDING CONSENT:

During a controlled drug buy, not at the apartment agents arrested a young male a 19 year old Hector Rivera-Diaz and after handcuffing him and searching him the agents located a key. Agents systematecally and psychologically coerced Mr. Rivera Diaz to tell them where the apartment was by using the "vulnerable subjective state," of Mr. Rivera-Diaz and promising him they would let him go back to Mexico, (releasing him that day) in exchange for the location of the apartment. (**See Exhibit 2 Paragraphs 5, 8, 9**). Although agents claimed in the sentencing hearing that Mr. Rivera-Diaz gave them **"search consent,"** this claim was one hundred percent false. (**See Exhibit 2 Paragraph 14**) statement of Mr. Rivera-Diaz. Mr. Rivera Diaz **did not have consent authority having only been to the apartment for "commercial transactions and commercial purposes," picking up drugs.** It is difficult to believe that the agents did not understand the Fourth Amendment law, rules or did not obtain a search warrant.

In the **United States v. Rogers**, 906 F. 2d 189, 192 (5th Cir. 1990), the Court stated, **"that a confession induced by an assurance of no prosecution is not voluntary"**; also see **Streetman v. Lynaugh,** 812 F. 2d 950, 957 (5th Cir.1987), stating; certain promises, if not kept, are so attractive that they render a resulting confession involuntary...**a promise of immediate release or that any statement will not be used against the accused is such a promise.** See **Morris v. Thaler**, 425 Fed. Appx. 415, 2011 (5th Cir. 2011). (**See Exhibit 2 Paragraph 5**) agents promising to release Mr. Rivera-Diaz, in exchange for the location of the Webb Chapel apartment.

The significance of this factor is that since Mr. Rivera-Diaz was tricked and lied

to by agents to consent to showing the agents the location of the apartment, in exchange for his immediate release, his consent, could not be voluntary because it was obtained by fraud, deception, pressure and coercion. Furthermore his statement (**See Exhibit 2 Paragraph 14**) shows that he never provided any **"verbal or written consent to search the apartment."** He lawfully did not have standing to provide consent and the agents did know this, or they should have known this in their capacity as agents, having used search warrants in the past.

Furthermore if the Government claims again, as they mentioned in the sentencing hearing transcripts that Mr. Rivera-Diaz somehow had authority to consent to a search of the apartment, and they somehow neglected to obtain a signed consent form, even implying Mr. Rivera-Diaz could have granted consent fails, **"because consent is invalid if it is coerced, either explicitly or implicity,"** See; **Schenckloth v. Bustamonte**, 412 U.S. 218, 228 S. Ct. 2041, 2048, 36 L. Ed. 2d 854 (1973). Coercion is clearly a factor if consent is, **"granted only in submission to a claim of lawful authority."** Id. at 233, 93 S. Ct. at 2501. **United States v. Gomez-Diaz**, 712 F. 2d 949, 951 (5th Cir. 1983).

## E. FAILURE TO MOTION TO SUPPRESS EVIDENCE IS CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL:

Ineffective assistance of counsel claims, require that counsel's performance fell below an objective standard of reasonableness and the defendant was prejudiced due to counsel's deficient performance. Failure to **"Motion to Suppress Evidence,"** discovered through an illegal warrantless search of a residence is, objectively deficient performance. Counsel failed to suppress the evidence discovered through an illegal search resulting in ineffective and deficient performance. It is well established that, "searches conducted outside the 'judicial process', without prior approval by a Judge or Magistrate, are per-se unreasonable under the Fourth Amendment-Subject to only a few specifically established and well-delineated exceptions." **Arizona v. Gant**, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). Quoting **Katz v. United States**, 339 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). Generally, "the proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment Rights." **United States v. Kelly**, 981 F. 2d 1464, 1467 (5th Cir. 1993)(quoting **United States v. Smith**, 978 F. 2d 171, 176 (5th Cir. 1992). In this case, that proofs is not required. As case law clearly states that, in cases where the search is not conducted pursuant

to warrant, **the Government bears the burden of proving that the search was valid.**
**United States v. Waldrop**, 404 F. 3d 365, 368 (5th Cir. 2005)(citing **United States**
**v. Castro**, 166 F. 3d 728, 733, n6 (5th Cir. 1999). In **California v. Hodari**, the
Court held that in order to show a seizure of a person, under the Fourth Amend-
ment, there must be the application of force, "however slight," or a submission
to an officer show of authority.

Typically, a valid and knowingly guilty plea can waive all nonjurisdictional
defects that occured prior to the plea, **unless the claim affects the voluntariness**
**of the plea,** see **Smith v. Estelle**, 711 F. 2d 677, 682 (5th Cir. 1983), see **Morris**
**v. Thaler**, 425 Fed. Appx. 415, 2011 U.S. App. LEXIS 10111, Court of Appeals Fifth
Circuit, May 18, 2011. Failure to file a Meritorious Fourth Amendment claim,
based upon an illegal search and the evidence collected as a result there of,
permits the petitioner to challenge his guilty plea as both unknowingly and in-
voluntary obtained due to ineffective assistance of counsel and the Sixth Amend-
ment.

The petitioner's Fourth Amendment claim clearly has merit, and had it been pur-
sued, the outcome at sentencing would have been different. The petitioner claims
that his guilty plea  was rendered involuntary as a result of his counsel's in-
effective assistance. His counsel not only failed to investigate and file a motion
to suppress, but also failed to advise him of the option he had to suppress the
warrantless search. If these facts are resolved in the petitioner's favor, there
is no doubt he would clearly be entitled to Habeas relief. Moreover the peti-
tioner's allegations are also clearly not conclusory or vague, lacking in spe-
cifics nor are they not without supportive factual narrative. The petitioner's
facts are detailed, coherent and consistent with the events and the petitioner's
Constitutional injury. "If the quality of counsels service falls below a certain
minimum level, the clients guilty plea cannot be knowing and voluntary because it
will not represent an informed choice." See **United States v. Cavitt**, 550 F. 3d
430, 440 (5th Cir. 2008). Also  **"a lawyer who is not familiar with the facts and**
**(550 F. 3d 441) law relevant to his clients case cannot meet the required minimal**
**level."**

The petitioner asks this Court to consider and come to the factual evidence based
conclusion, that the petitioner's missed Fourth Amendment claim was not without
merit. As a result of this Circuits and the Supreme Court's interpretation of the
laws regarding Meritorious Fourth Amendment claims, it is simply impossible for
the Court to conclude that the petitioner's counsel was effective in her decision

to not advise the petitioner, nor to investigate the claims or facts and as a result, the decision of counsel not to file a motion to suppress could not be, "strategic, concious, and informed." See **Strickland**, 466 U.S. at 689; **Crane**, 178 F. 3d at 314, nor can the Court even assume that the petitioner's former counsel was even "familiar with the [relevant] facts of law," in advising the petitioner to enter a guilty plea. See **Herring v. Estelle**, 491 F. 2d at 128.

The Fifth Circuit case of **Morris v. Thaler**, 425 Fed. Appx. 415 (5th Cir. 2011) is instructive where the petitioner was permitted to challenge his guilty plea as involuntary based upon ineffective assistance of counsel when his attorney failed to file a motion to suppress the central evidence in the prosecutions case. See also **United States v. Cavitt**, 550 F. 3d 430 (5th Cir. 2008), where petitioner could challenge guilty plea as involuntary based upon counsel's failure to file a motion to suppress. **United States v. Cavitt, Court of Appeals 5th Circuit.**

The Fifth Circuit case of **Brock** is also instructive on this issue, **"an error by counsel even if professionally unreasonable, must be prejudicial to the defence in order to constitute ineffective assistance under the constitution."** Strickland, 466 U.S. at 692, **Brock v. United States**, 2017 U.S. Dist. LEXIS 225319, Western District of Texas.

In **"Brock,"** the Court found that his counsel misled **Brock** concerning his right to appeal a motion to suppress. In **United States v. McDonald**, 416 Fed. Appx 433, (5th Cir. 2011), **McDonald** appealed the denial of the District Court's denial of his motion to withdraw his guilty plea. The Court held tha **McDonald** counsel's advice was erroneous because counsel advised **McDonald** that he could appeal the denial of his suppression motion without securing a conditional plea. The Court of Appeals found that **McDonald's** guilty plea was infact involuntary and clearly unknowing and that as a result of counsel's defective advice, his guilty plea could not stand because he received ineffective assistance of counsel.

## F. THE FIFTH CIRCUIT SIX CRITICAL VOLUNTARY CONSENT FACTORS AND CONSTITUTIONAL CONSIDERATIONS:

The burden to establish voluntary consent to search rests with the Government who failed to get a signed consent form and failed to understand that Mr. Rivera-Diaz did not have authority to consent. If somehow the Court finds that the Government's consent was somehow remarkably valid, that valid consent if hypothetically were obatined would also fail miserably the Six Factors test adopted and used in the Fifth Circuit in thousands of cases.

The Fifth Circuit uses Six Key Factors when looking at warrantless consent searches. In this case and the petitioner's argument, the fact is the records testimony of Agent Brian Finney, states that Mr. Rivera-Diaz gave consent to search the Webb Chapel apartment. See direct examination of agent Brian Finney by Ms. Lederman (See Sentencing Hearing Transcripts Page 12, lines 12, 13, 14 and 15. Yet the affidavit statement of Mr. Rivera-Diaz states the facts entirely different that he did not give consent. To resolve this issue may require further evidence and an evidentiary hearing but regardless of that probable solution the **Government still needs to overcome the list of Six Key Factors used by the 5th Circuit and secondly why they did not get a signed consent form,** considering one of their other defenses to justify the illegal and warrantless search is that, the agents somehow after arresting and interviewed Mr. Rivera-Diaz and promising to release him, somehow conclusively thought he lived at the apartment and had authority over it, because that based upon the record is conclusively, simply impossible for the agents to assume. "Warrantless searches of a person's home are presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the search." **United States v. Gomez-Moreno,** 479 F. 3d 350, 354 (5th Cir. 2007)(citing **United States v. Jones,** 239 F. 3d 716, 719 (5th Cir. 2001)). "The burden is on the Government to establish circumstances justifying a warrantless search." Id. "To be valid, consent to search must be free and voluntary." **United States v. Kellet,** 981 F. 2d 1464, 1470 (5th Cir. 1993)(quoting **United States v. Olivier-Becerril,** 861 F. 2d 424, 425 (1988)). (Internal quotation marks ommitted). **"The voluntariness of consent is 'a question of fact to be determined from the totality of all the circumstances.'"** Id. (quoting **Schneckloth v. Bustamonte,** 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)).

**The Fifth Circuit utilizes Six Factors to determine whether consent is voluntary:**

(1) The voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. **Olivier-Beceriil,** 861 F. 2d at 426 (citing **United States v. Galberth,** 846 F. 2d 983, 987 (5th Cir. 1988)). "Although all of the above factors are highly relevant, no one of the Six Factors is dispositive or controlling of the voluntariness issue." **Galberth,** 846 F. 2d at 987.

approximately 48 hours before the illegal entry and search by agents. The peti-
tioner has enclosed the following case law so that there can be no doubt, he had
actual Fourth Amendment standing and protections.

The Supreme Court has long held that a claimant alleging a Fourth Amendment vio-
lation **"must have a cognizable Fourth Amendment interest"** a concept known as
**"Fourth Amendment Standing." Byrd v. United States**, 138 S. Ct. 1518, 1530, 200
L. Ed. 2d 805 (2018). This is so because **"Fourth Amendment rights are personal
rights which...may not be vicariously asserted." Rakas v. Illinois**, 439 U.S. 128,
133-34, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978) (quoting **Alderman v. United States**
394 U.S. 165, 174, 89 S. Ct. 961, 22 L. Ed. 2d 176 (1969), (and collecting cases).
In other words, "the application of the Fourth Amendment depends on whether the
person invoking its protection can claim a justifiable, a reasonable, or a legiti-
mate expectation of privacy that has been invaded by Government action." **Smith v.
Maryland**, 442 U.S. 735, 740, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979) (internal
quotation marks ommitted). This is the plaintiff's burden to prove. **Rawlings v.
Kentucky**, 448 U.S. 98, 104, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980). The Supreme
Court has also articulated the Fourth Amendment interest as a **"reasonable expec-
tation of privacy,"** defined by **"a source outside of the Fourth Amendment either
by reference to concepts of real or personal property law or to understandings
that are recognized and permitted by society." United States v. Jones**, 565 U.S.
400, 408, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012)(quoting **Minnesota v. Carter**,
525 U.S. 83, 88, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998)).

As stated previously, the Fourth Amendment prohibits police officers from entering
a home or hotel room to search or seize persons or property without a warrant.
See **Payton v. New York**, 445 U.S. 573, 590, 100 S. Ct. 1371, 63 L. Ed. 2d 639
(1980). As **Payton** makes plain, police officers need either a **warrant or probable
cause plus exigent circumstances** in order to make a lawful entry into a home.
**United States v. Standridge**, 810 F. 2d 1034, 1036 (11th Cir. 1987)(stating the
Fourth Amendment's warrant requirement **"applies to a motel room"**).

The Supreme Court, however, has also held that while "an overnight guest in a
home may claim the protection of the Fourth Amendment...one who is merely present
with the consent of the householder may not." **Minnesota v. Carter**, 525 U.S. 83,
90, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998). **Thus, a person who is merely present
in another's dwelling to engage in a purely commercial transaction such as nar-
cotics trafficking, who is on the premises for a relatively short period of time,
and who does not have a previous connection with the householder, has no legiti-
mate expectation of privacy in the premises and a warrantless search does not**

Every single factor of the Six guideline rules runs against the Government's claim of voluntary consent. Also **Exhibit 2 Paragraphs 4, 5, 6, 7, 8, and 9,** plus the record all pushes against the Government agents voluntary consent statements.

Taking this one step further, the petitioner's PSR is also somewhat helpful and provides the following evidence;

**A)** After being arrested, "a search of Rivera-Diaz revealed a key along with other personal items."**(See PSR Paragraph 9, Line 1).**

**B)** "Rivera-Diaz stated he picked up the methamphetamine found in Ixta-Urena's vehicle from this apartment," **(See PSR Paragraph 9, Lines 4, 5.**

**C)** "Ixta-Urena provided Rivera-Diaz with the key to the Webb Chapel apartment one week prior. He reported the apartment was normally occupied by a hispanic male whom he did not know." **(See PSR Paragraph 10, Lines 5, 6, and 7).**
Two significant facts come out of this part of the PSR investigation that could be addressed in an evidentiary hearing. They are; (1) If Ixta-Urena provided Rivera-Diaz with a key, why did the agents fail to ask for her consent to search the apartment, and (2) secondly the record confirms a second male other than the petitioner who was there, when the visits to the apartment by Rivera-Diaz to pick up drugs that all took place before the petitioner came to the city of Dallas.

**D)** Mr. Rivera-Diaz, lived with his Aunt in North Richland Hills. This confirms he did not stay or live in the Webb Chapel apartment. **(See PSR Paragraph 9, Line 9),** "upon arrival, he lived with Ixta-Urena at her house."

## G. THE FAILURE TO KNOCK AND ANNOUNCE POLICE PRESENCE:

When police entered the apartment, they did so silently, and when the defendant, came out of the bathroom, he was greeted by an assault rifle barrel being pushed into the skin of his cheek, and an overwhelming police presence.

It is undisputed that the petitioner was both seized and injured when agents pointed a firearm at him. An officer siezes a person where he, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." **Flores,** 381 F. 3d at 396 (citing **Terry v. Ohio,** 392 U.S. 1, 19n. 16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). When the lead agent of the group, placed the barrel of the assault rifle on the petitioner's face, he clearly "restrained the liberty of a citizen" through physical force and show of authority See **Bazan,** 246 F. 3d at 490 ("[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."

(quoting **Tennessee v. Garner,** 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L. Ed. 2d (1985)).

**AGENTS ENTRY INTO THE PROPERTY WITHOUT KNOCKING AND ANNOUNCING THEIR PRESENCE VIOLATED THE FOURTH AMENDMENT AND WAS CLEARLY UNREASONABLE UNDER ESTABLISHED LAW.**

The petitioner additionally argues that, even if somehow the agents were not objectively unreasonable in entering the apartment without a warrant, **failure to knock and announce** before doing so violated the Fourth Amendment. The Supreme Court has noted that **"[t]he common-law principle that law enforcement officers must announce their presence and provide residents an opportunity to open the door is an ancient one." Hudson v. Michigan,** 547 U.S. 586, 589, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006)(citing **Wilson v. Arkansas,** 514 U.S. 927, 931-32, 115 S. Ct. 1914, 131 L. Ed. 2d 976 (1995)). In 1995, the Supreme Court held explicitly that his ancient principle **"is an element of the reasonableness inquiry under the Fourth Amendment." Wilson,** 512 U.S. at 934. Accordingly, petitioner's argument that the Government's entry was unlawful because they failed to knock and announce successfully states a Constitutional claim. The only question that remains is whether the agents actions were objectively unreasonable under clearly established law, and they were.

While there are exceptions to the knock-and-announce rule, the Supreme Court has held that, in order to justify a "no-knock" entry, "the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." **Richards v. Wisconsin,** 520 U.S. 385, 394, 117 S. Ct. 1416, 137 L. Ed. 2d 615 (1997). The Fifth Circuit has explicitly ruled that, even when warrantless entry is justified by exigent circumstances, at least one of these factors must be present to excuse the no-knock entry. **Trent,** 776 F. 3d at 382 (holding that "hot pursuit-unless accompanied by one of the specific justifications enumerated in **Richards** does not justify a no-knock entry.").

Clearly there was no reason to believe there were weapons in the apartment as the agents asked Mr. Rivera-Diaz, and he confirmed there were not. (**See Exhibit 2 Paragraph 13**): the agents simply should have sought a warrant, the fact that the PSR explains in Paragraph 10, that for at least two weeks prior to the arrest, Mr. Rivera-Diaz has visited the apartment picking up large amounts of drugs, before the petitioner's arrival in Dallas, confirms there was no risk of the destruction of the evidence.

40

## CONCLUSION:

A District Court need not hold a hearing so long as it has sufficient facts before it to make an informed decision on the merits of the petitioner's claim. In order although, to be entitled to a hearing, a petitioner must only show Independent Indicia and that a factual dispute, if resolved in the petitioner's favor, would entitle him to relief. A petitioner's allegations must be more than merely conclusory allegations of events, they must be supported by both case law and specific facts.

In the petitioner's argument Section VI the Meritorious Fourth Amendment Argument, it is abundantly clear that the Government agents entered an apartment residence without a warrant. It is also clear the agents had time to get a warrant but chose not to. It is also clear that the petitioner was an overnight guest at the apartment, and as explained in Section VI, had Fourth Amendment Standing.

The supporting details that clearly illustrate the petitioner's Meritorious Fourth Amendment Claims are, the fact there was no warrant, there was an illegal search an illegal seizure of both the petitioner and prejudicial evidence, there was no advice by counsel or investigation by counsel, counsel then failed to protect the petitioner by filing a suppression motion and the resulting uninformed, unintelligently made plea and plea process with the Court (because counsel failed to inform, discuss or pursue any defence for the defendant), all clearly and as factual evidence, supports an undeniable factual dispute, that, the record evidence confirms, there was a Fourth Amendment Claim and if the claim is resolved in favor of the petitioner, that claim is sufficient to entitle the petitioner to relief due to what appears to be very clear Constitutional injury supported by numerous Supreme Court and Fifth Circuit cases.

As stated in Section "V part C" case law overwhelmingly supports the fact that there is a factual substance and confirmed Independent Indicia supporting the petitioner's allegations. These facts clearly explain that the petitioner suffered injustice when, his former counsel recommended he plead guilty thus creating the prejudicial circumstances that resulted in this wrongful conviction. The petitioner plead guilty because of ineffective assistance of counsel, where a better informed criminal defence lawyer, would have certainly brought forward the illegal warrantless search of the apartment, because without that search and the evidence it obtained as "fruits of the poisonous tree," the petitioner would not be today, convicted by involuntary plea, nor could he had been even charged with the offences and successfully convicted, or even pled guilty.

Counsel's complete failure under **Strickland** and the other supporting case law this "motion to vacate" explains, plus the fact that there is <u>factual evidence of Constitutional Injury due to counsel's failure and the warrantless entry into the Webb Chapel apartment</u>, clearly raise a Meritorious argument that the petitioner's conviction was obtained by a complete breakdown in our adversarial justice system requiring the Court to vacate the petitioner's 21 years 10 months sentence. **The petitioner was wrongfully convicted by pleading guilty involuntarily and unintelligently.** Because both the Government agents and his former counsel violated his Constitutional Fourth, Sixth and Fourteenth Amendment Rights, it resulted in a complete miscarriage of justice, a conviction of a person who is factually not guilty of the crime he was accused of and wrongfully convicted.

The petitioner respectfully asks this Court to review the facts supported by the record and either vacate the petitioner's sentence and wrongful conviction, or alternatively order an evidentiary hearing to resolve his issue contained within. As to why counsel failed to even consider the warrantless search of the apartment, why she failed to even consider, the petitioner's standing under the Fourth Amendment as an overnight guest and finally, <u>why counsel never investigated or informed the petitioner before instructing him to plead guilty about his Constitutional Right to motion the Court to suppress all of the central evidence in the Government's case against him.</u>

These and other facts as explained within by the petitioner supports the clear argument that Constitutional Injury of the petitioner's right took place, and therefore the petitioner's conviction cannot stand.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on May 7, 2020.

JUAN JIMENEZ NAVA
Juan Jimenez-Nava

42

JUAN JIMENEZ NAVA
REG. No. 57033-177
FCI OAKDALE II
P.O. BOX 5010
OAKDALE, LA. 71463

### AFFIDAVIT

1. My name is Juan Jimenez-Nava also known as Cesar Edmundo Murguia. I was born on February 27, 1975. I have 4 children and been married for 22 years to Olyenka Sanchez.

2. I was sentenced to 21 years 10 months on October 12, 2018. I pled guilty instead of going to trial because the advice given to me by my former counsel, was misleading and ineffective. This explained in part on Pages 1 to 5, of my Memorandum of Law in Support of my 2255, the "Opening Statement and Prayer for Relief," Section I.

3. I was arrested because I was an overnight guest in an apartment, where I had arrived at on April 2, 2018. At approximately 7 pm on April 4, 2018, several heavily armed DEA or Government agents, obtained a key to the apartment, and entered the apartment without knocking or making any announcement they were in the apartment. When I came out of the bathroom I was confronted by an agent who placed the barrel of an assault rifle on my right cheek. They did not have any warrant, or permission to enter.

4. As stated in the Memorandum in Support of my 2255, I was with my family and sister for two weeks before driving to Dallas from Cibolo, Texas. The drive took place April 2, 2018, and took about 5 hours to complete. My sister testified to this on the stand as a witness before the Court. See Section II, Page 6, Paragraph 2.

5. Section II, Page 6, Paragraph 4 and 5 explains that I spent April 3, 2018, looking for employment, and purchased a blow up mattress to sleep on at the apartment and some food, coffee and toiletries, also on April 4, 2018, I spent the day driving around looking for work and potential locations where I could move to in the future.

6. The Memorandum explains in Section II, Page 7, Paragraph 9 the agents found my luggage, clothes, toiletries and the blow up mattress.

7. I was appointed counsel Ms. Pia Lederman on April 5, 2018 and plead not guilty.

EXHIBIT 1

1

8. On May 25, 2018, without any knowledge or any advice, even consideration by counsel or investigation by counsel, I was instructed to plead guilty and did. I was never adviced by counsel about my Fourth Amendment Rights despite explaining to her in detail all the events that took place with respect to the illegal and warrantless entry into the apartment.

9. I told my former counsel Ms. Lederman that the agents never read me my Miranda rights or even asked my permission to search the apartment as I was there alone when they came into the apartment and she told me "its okay they're FEDS they can do whatever they want."

10. During the plea process I was also wrongfully told by counsel to just agree with what the Judge stated. I explained this in Section II, Page 8, Paragarph 12, of the Memorandum in Support. Ms. Lederman told me when I had real concerns about agreeing with what the Judge was reading not to worry, she stated, "do not worry thats all hearsay." This was wrong and defective advice.

11. Upon arrival at FCI OAKDALE II, I spoke with inmates who informed me I have Constitutional violations I explain this in Section II, Page 8, Paragraph 14, of the Memorandum in Support of the 2255.

12. I began writing to the Court of Appeals because at this point I was still in the Direct Appeal process and those letters Exhibits 3, 4, 5, and 6, are attached to the Memorandum in Support of the 2255. At this point I wanted to somehow withdraw my guilty plea.

13. At this point I became aware that I had Constitutional Rights, that my plea was unintelligently made and involuntary because I did not have an assistance from counsel or consideration of my rights as an overnight guest to suppress the search, entirely and everything found within the apartment, all of which make up the case against me and my involuntary guilty plea.

14. There is no doubt that I received negligent misadvice from Ms. Lederman and this advice resulted in my wrongful conviction and 21 years 10 months sentence.

15. Furthermore Ms. Lederman made a mistake on Appeal that impacted my chance at any relief. She failed to have the Court or request the Court to explain its ruling against the "minimal role adjustment," this impacted the Court of Appeals ruling and was ineffective and negligent.

EXHIBIT 1

2

16. In Section II, Pages 10-11, Paragraph 8, I list of what I believe is the Constitutional Injury I have suffered due to counsel's ineffective assistance. These key points supports the argument and are listed as items A-G.

17. With what I have learned researching case law and speaking with inmates about the Fourth Amendment Rights I had, I would have for certain insisted that any lawyer working for me file a suppression motion and challenge the warrantless illegal entry and search of the apartment. Further to this whole issue, is the fact that counsel not only should have investigated and informed me of my rights counsel should have taken time to consider any viable defence. Clearly all the case law supports the fact that when agents crossed the threshold of any home, residence or apartment without a warrant, the Fourth Amendment protection come into place.
Clearly had Ms. Lederman after I told her about the arrest and events, should have explained all the options I had, including the Fourth Amendment.
Had I had, proper advice, I would have for certain gone to trial and suppressed everything that took place, the warrantless entry, search, arrest and all the evidence against me.

18. I have filed my 2255 motion, the Exhibits, documents, evidence and Memorandum in Support, because I received misleading advice. Counsel did know, or should have known in her capacity as a criminal lawyer that Constitutional Violations took place and she should have investigated and informed me of options that I had to fight those issues. As a result of her ineffective advice, I involuntarily and unknowingly plead guilty. I wish I had somehow known about my rights. I would have for certain filed a motion to suppress. I would have gone to a trial jury. I have spent months researching the issues in my case. I was told from the begining bad advice that affected the entire process and all the events including my unintelligently made plea process. I ask that this Court consider these facts and the record as both support my Constitutional injury as a result of my ineffective assistance of counsel.

19. Also when they arrested me they had me sat on a plastic chair in the living room area, and I saw the agents dumping unknown liquids down drains in the kitchen sink.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

JUAN JIMENEZ NAVA

Executed on May 7, 2020.                    Juan Jimenez-Nava

EXHIBIT 1

HECTOR RIVERA DIAZ
FED. ID. 57035-177
FCI OAKDALE II
P.O. BOX 5010
OAKDALE, LA. 71463

March 03, 2020.

1) My name is Hector Rivera-Diaz, I was born in Apatzingan, Michoacan on November 8, 1998 my spouse is Maria del Carmen Manriquez and we have a 21 month old daughter her name is Ivana Rivera-Manriquez, I have 2 sisters their names are Cataleya and Dayana 2 and 5 years of age. I was raised by my mother only her name is Norma Rivera-Diaz.

2) I had only come to the United States to find work and live a normal life, when I could not get work my Aunt Rosa Elvia Ixta-Urena offered me a job working with her.

3) During all this time, about 2 weeks I lived with my Aunt at her house in North Richland Hills.

4) I was with my Aunt on April 4, 2018, when She and I were arrested by agents. Once I was handcuffed, the agents searched me and found a door key to the Webb Chapel apartment. The arrest took place in a parking lot at La Fiesta grocery store.

5) After the arrest the agents told me they would let me go. That I could go back to Mexico, so as a result, I agreed to tell them where the Webb Chapel apartment was located, because I believed they really would let me go back to Mexico. I did not know anything about my Miranda rights, or my right to remain silent and I was intimidated and scared by them.

6) When the arrest took place approximately 15 agents swarmed around the vehicle with guns drawn. They threw me to the ground after pulling me from the passenger seat of the vehicle. After I was handcuffed and searched, the agents kept asking me questions, and I did not understand the fact that I would get a larger sentence for just doing what I did, and I did not know my rights or any options I had to not talk to the agents.

EXHIBIT 2

1

7) I have only completed 8th grade in Mexico, and the arrest was so incredibly stressful and overwhelming, that I even asked one agent if I could call my mother in Mexico to find out what to do.

8) During the long and intimidating interrogation after my arrest, I felt overwhelmed, pressured and that I had to cooperate. When I was intimidated the agents use this to trick me with the promise that they would let me go. I thought they would, I thought that I would be simply let go to return to my mother and family in Mexico.

9) About 30 to 60 minutes after the arrest, I agreed to show the agents to the apartment, because again they told me I could go back home to Mexico that day. I was foolish and naive to believe this but I did.
They drove me to the apartment and we pulled infront with a clear view of the windows and I pointed out the apartment. As we did this, no one from inside the apartment looked out or noticed me or the agents. The agents were trying to also not be noticed.

10) One of the questions I was asked by the agents was about guns or weapons and also who was in the apartment.

11) I told them there was at least one male, could be two males, as there was one male sleeping on a blown up mattress in the living room. I have since gotten to know that male as Juan jimenez-Nava, because we were locked up together during the pre-plea process, in pre-trial at Fort Worth, Texas, and now he is also in FCI OAKDALE II, and I can say with 100% certainly that Juan Jimenez-Nava, was not the unknown male who was at the Webb Chapel apartment, when I went there to pick up the two previous loads of drugs, one of 5 kilograms of meth-amphetamine and the second one of 2 kilograms of methamphetamine.

12) When I was arrested with my Aunt they separated us, and I have no idea if they asked my Aunt for permission to search the apartment as it was my Aunt who gave me the key. I did tell the agents this when they arrested me and that the key was to the front door of the apartment.

13) As for guns and weapons, I told the agents I had never seen a gun or any weapons in the apartment at all. As far as I knew there were no guns at the apartment, nor any weapons.

EXHIBIT 2

2

14) I never gave the agents my consent to search the apartment. I did not knowingly sign any consent to search forms, and I explained to them, I only went there to quickly pick up drugs, and that was my only reason at the apartment.

15) I would go to the apartment with my Aunt Rosa Elvia Ixta-Urena who waited outside in the vehicle, I entered the apartment and another hispanic male, who I did not know, and who was not Juan Jimenez-Nava would provide me the intended amount of methamphetamine.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on March 03, 2020.

Hector Rivera-Diaz

EXHIBIT 2

3

HECTOR RIVERA DIAZ
FED. ID. 57035-177
FCI OAKDALE II
P.O. BOX 5010
OAKDALE, LA. 71463

Marzo 03, 2020.

1) Mi nombre es Hector Rivera-Diaz naci en Apatzingan, Michoacan el dia 8 de
Noviembre de 1998, mi esposa es Maria del Carmen Manriquez con quien tengo
una hija de 21 meses de nombre Ivana Rivera-Manriquez, tengo 2 hermanas de
nombres Cataleya y Dayana de 2 y 5 anos de edad, fui criado por mi Mama
solamente su nombre es Norma Rivera-Diaz.

2) Yo habia venido a los Estados Unidos a encontrar un trabajo y vivir una
vida normal. Cuando no pude encontrar trabajo mi Tia Rosa Elvia Ixta-Urena
me ofrecio trabajo, trabajando con ella.

3) Durante este tiempo, cerca de 2 semanas vivi con ella en su casa en la
ciudad de North Richland Hills.

4) Yo estaba con mi Tia en Abril 4 del 2018, cuando ella y yo fuimos arresta-
dos por unos agentes. Una vez que me habian esposado, los agentes me revisaron
el cuerpo y encontraron una llave de la puerta del apartamento de la calle
Webb Chapel Rd., el lugar donde me arrestaron fue en el estacionamiento de
una tienda llamada La Fiesta.

5) Despues del arresto los agentes me dijeron que me dejarian ir libre, para
que me pudiera regresar a Mexico, por lo cual yo accedi a decirles la ubicacion
del apartamento de la calle Webb Chapel Rd., porque yo en verdad les crei a
los agentes que me dejarian ir libre para regresarme a Mexico. Yo desconocia
sobre los derechos Miranda, o mi derecho a mantenerme callado y estaba siendo
intimidado y espantado por ellos.

6) Cuando me arrestaron aproximadamente 15 agentes rodearon el vehiculo y
apuntandome con sus armas. Luego ellos me sacaron a jalones del lado del
pasajero y me tiraron al piso. Despues de que me esposaron y me revisaron el
cuerpo, los agentes me seguian haciendo preguntas, y yo no entendia el hecho

EXHIBIT 2

de que me darian una sentencia mas grande por haber hecho lo que hice, y yo no sabia de mis derechos o algunas de las opciones que yo tenia de no hablar con los agentes.

7) Yo estudie hasta 2do grado de secundaria en Mexico y el arresto fue demasiado estresante y abrumador a tal grado que le pregunte a uno de los agentes que si podia hablarle por telefono a mi Mama a Mexico para que ella investigara que hacer.

8) Durante el largo e intimidante interrogatorio despues de mi arresto me senti abrumado, presionado y que yo tenia que cooperar con ellos. Cuando los agentes me intimidaron usaron el truco y la promesa que me dejarian ir libre. Pense que si lo harian, pense que simplemente me dejarian ir para regresar a mi Mama y mi familia en Mexico. Tambien les pedi de favor usar un telefono para hablarle a mi Mama para ver que se podia hacer, pero lo que en realidad paso fue que los agentes me forzaron, y me enganaron a que los llevara al apartamento y yo no tenia entendimiento de las leyes o mis derechos aunque tenga 19 anos de edad y sea nacido en Mexico, aun asi tenia el derecho de simplemente esperar hasta que tuviera un abogado.

9) Cerca de 30 a 60 minutos despues de que me arrestaron yo accedi a ensenarles a los agentes donde quedaba el apartamento, porque una vez mas me dijeron que me dejarian irme libre de regreso a Mexico ese dia. Yo fui tonto e ingenuo en creerles esto pero confie en ellos.
Ellos me llevaron al apartamento y nos estacionamos enfrente de este, desde donde podiamos ver claramente las ventanas y les senale cual era el apartamento y mientras haciamos esto, nadie de adentro del apartamento nos observaba o se dio cuenta de que estabamos los agentes y yo afuera. Los agentes tambien trataban de no ser vistos.

10) Una de las preguntas que me preguntaron los agentes fue que si habia alguien y que si tenia armas dentro del apartamento.

11) Les dije que al menos habia un hombre o podria haber 2, porque habia un colchon inflable en la sala del apartamento en cual se miraba que alguien dormia en el. Apenas vine a saber que ese hombre es Juan Jimenez-Nava, porque estuvimos juntos encerrados durante el proceso de la sentencia en Fort Worth, Texas. Y ahora tambien estamos juntos en FCI OAKDALE II en LOUISIANA y puedo

EXHIBIT 2

decir con 100% de certeza que Juan Jimenez-Nava no era el hombre desconocido que estaba en el apartamento de la Webb Chapel Rd., cuando fui a recoger droga las dos veces anteriormente, una vez fueron 5 kgs y la segunda vez fueron 2 kgs de metanfetamina ambas veces.

12) Cuando fui arrestado con mi Tia Rosa Elvia Ixta-Urena nos separaron, y no tengo idea si le preguntaron a mi Tia por permiso para entrar y revisar el apartamento ya que mi Tia fue la que me dio la llave. Yo si les dije a los agentes esto cuando me arrestaron y que la llave era para la puerta de entrada del apartamento.

13) Referente a armas o pistolas, yo les dije a los agentes que yo nunca habia visto ninguna pistola o armas en el apartamento. Hasta donde yo sabia no habia pistolas dentro del apartamento o ningun tipo de armas.

14) Yo nunca les di consentimiento a los agentes para que entraran al apartamento. Yo nunca firme ningun consentimiento o formulario dandoles permiso para entrar, y yo les explique a ellos que yo solo iba al apartamento para recoger droga y siempre entraba y salia rapido, y esa era mi unica razon por la cual iba al apartamento.

15) Yo iba al apartamento con mi Tia Rosa Elvia Ixta-Urena quien siempre me esperaba afuera en el carro, yo entraba al apartamento y otro hombre hispano, al cual yo no conocia, y el cual no era Juan Jimenez-Nava era el que me proveia la cantidad de metanfetamina.

Yo declaro (o certifico, verifico, o digo) bajo pena de perjuicio que lo que esta escrito es cierto y correcto.

Hecho en Marzo 03, 2020.

Hector Rivera-Diaz
Héctor Rivera-Díaz

EXHIBIT 2

JUAN JIMENEZ NAVA
FED ID 57033-177
FCI OAKDALE II
FEDERAL CORRECTIONAL INSTITUTE
PO BOX 5010
OAKDALE, LA. 71463-5010

FEB 14 2019


UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT
600 SOUTH MAESTRI PLACE
NEW ORLEANS, LA 70130


ATTN: CLERK OF THE COURT OF APPEALS:

RE: REQUESTING CHANGE OF COURT APPOINTED COUNCIL,

My case number is 4:18-CR-00093-A-3, was motioned for appeal to this
court on October 22, 2018.  CASE NUMBER 18-11393 COURT OF APPEAL:

It is scheduled for the first filing by my appointed council FEB 28th
2019. I was during  the plea process represented by Ms. Pia R.
Lederman 817-860-8888 E-Mail: Pia@LedermanLawFirm.Com

When she was appointed she was also appointed for this appeal process
if I chose or needed to appeal.

On October 12th 2018, I was unbelievably sentenced to 262 months.
Durring the rushed Plea Process, I did not get a plea agreement offer
from the goverment, nor was advised that  I was facing a sentence
anywhere near 262 months.

As a result of a number of critical errors I have now insisted upon
an appeal of my sentencing and possibly my guilty plea.

I have tried for the last three months to contact Ms. Lederman, I
have tried to also have my sister contact her office on several times
with no sucess. On a number of dates I sent emails to her office,
from FCI Oakdale II system, to inform her and instruct her to get me
a new attorney through the appelant department of the federal public
defenders office.

On or about Jan 23rd 2019, I called the federal public defenders
Office appeals department to request assistance to replace Ms.
Lederman for the appeal process. They instructed me to write to this
court and to request that their office be appointed.

Around Jan 15th to 20th 2019, I called ms. lederman's office  several
times. I was calling on the recorded FCI Oakdale Inmate lines, that
i only use to call my wife and children because the time is
restricted to only 300 minutes per month or ten minutes per day.

/2

EXHIBIT 3

After a number of failed attempts by my sister, I finally reached Ms. Lederman's staff member on January 23 2019. The staff member could not set a time for me to speak with Ms. Lederman. I called four more times and was finally spoke with her on January 25th 2019.

Nothing was resolved and as a result of her avoiding my calls and emails I feel at this point that I can not trust her on my appeal. I am very concerned that my appeal process will like my sentencing turn out to be an unexpected disaster.

When I asked her staff they told me the following:

1) Ms. Lederman is not handling my appeal and has givin the file away to another attorney.

I was told by her staff a Mr. Mark Mc Doo.

2) I am unable to have any contact with Mr. McDoo, nor has any of this been confirmed by any correspondence.

Also much to my disadvantage, Ms. Lederman my attorney has been avoiding contact with me, which is prejudicial to my appeal process and any chance I have of success. it also jeopardises the entire fairness of the process.

MY REQUEST TO THE COURT:

My request to the Court is to replace Ms. Lederman and appoint the Federal Public Defenders Office in her place. I have spoken with the FPDO and they are aware of my case.

I am concerned that without the Court's assistance that my key appeal issues will not be presented with the critical facts related to the events that have resulted in this unfair 21 year, 10 month sentence.

Further Ineffective Assistance Of Council, during the plea process is for certain an issue within my case, along with other factors.

The ineffective assistance of council combined with the avoidance of contact by my attorney, dispite my own efforts to contact her, plus my families efforts to contact her all point to a clear issue needing the courts intervention and the appoinment of new council. I am asking the Court to   ensure my rights to the appeal process are protected in a non prejudicial appeal and to have the assistance of Availiable Council, that I can speak with and work with plus also someone that I can trust as guarranteed by the United States rules and also the constitution. Currently I just do not feel that I can trust Ms. Lederman. I am pleading with the Court for assistance pro-se as an inmate and require crucial intervention to prevent a further violation of my rights to a throughall and unbaias Appeal process.

Sincerely Juan Jimenez Nava

JUAN JIMENEZ NAVA

EXHIBIT 3

JUAN JIMENEZ NAVA
FED ID 57033-177
FCI OAKDALE II
PO BOX 5010
OAKDALE, LA 71463

MARCH 14, 2019

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT
600  SOUTH MAESTRI PLACE
SUITE 115
NEW ORLEANS, LA 70130

ATTN: MS. MELISSA V. MATTINGLY, DEPUTY CLERK
RE: USA V. JUAN JIMENEZ-NAVA
    USDC No.  4:18-CR-93-3 ·
    No.  18-11393

Dear Ms. Mattingly,

I did receive your letter dated march 8,2019 yesterday March  13, 2019 at approximately 4pm.
I have not as of 4:00PM today, march 14, 2019 received the "Reply from Ms. Lederman to the court". Regarding my plans to replace her. (Her Court order to Response)

It is critical that I be given "an extension", as to the time for my reply of at least an additional 14 to 21 days, as I have not yet received her Court Order Response.

I have real concerns, that the court must consider with respect to my motion to replace her, with the appointment  of the Federal Public Defenders Office, to complete my direct appeal.

There are Fourth amendment issues within my case. Had these been properly explored, it would have proven facts that could have exonerated me of the government's claims.

The warrantless search of the apartment in my case, was an "Illegal Search Without Justification", that resulted in my guilty plea and sentence.

Also there are other Constitutional claims that need to be explored. Since I have already made some of my concerns known to the court, regarding Ms. Lederman, it is potentionally very prejudicial, to have her prepare and submit a direct appeal. Also she did so, without even discussing any of the concerns and issues that I had. In my view, all of this is both concerning and prejudicial.

I am requesting an extention to ensure enough time to review and respond to her claims, with respect to the court's order

Sincerely,
JUAN JIMENEZ-NAVA

EXHIBIT 4

FED ID 57033-177
FCI OAKDALE II
PO BOX 5010
OAKDALE, LA 71463-5010

March 30 2019

Mr. Lyle W.Cayce Clerk
United States Fifth Circuit
Court Of Appeals
600 South Maestri Place
New Orleans, LA 70130-3408

Re: United States v. Jimenez-Nava / 5th Circuit No. 18-11393

Dear Mr.Cayce:

Re Ms. Ledermans Response To The Court Dated March 6th 2019;

On Monday March 25th 2019, I received from the court, Ms. Ledermans
"Response to the Courts Order", enterd February 26 2019.
Although Ms. Lederman claims that she has an ethical and professional
obligation to keep me informed, she simply has not done so. this is not
our only issue.

I should never have been advised by Ms. Lederman to plead guilty. Not
only because of the extremely long sentence I was given, but more
fundamentally due to the fact that " a grave miscarriage of justice",
occurred because the DEA agents did not have a search warrant, nor did
they have constitutionally acceptable consent to enter the premises
where I was staying  and had only arrived at, two days prior. As a result
my rights were violated.

This unlawfull unwarranted entry is the only reason I was convicted.
the DEA agents obtained a key from the pocket of a 19 year old young
man when he was arrested. This young man has a very limited education
having only completed grade 8  and had no understanding of his rights.
The key was obtained under a clear coersion and also duress. Then the
DEA instead  of simply calling in for a warrant, or obtaining a warrant
took the key, came to the residence, opened the door without knocking
or announcing their presence and not only fully searched the apartment
but after arresting me failed to , as the Court Transcripts confirm
failed to read me my Miranda Rights.

EXHIBIT 5

As a result of these facts, my plea was involuntary, a result of
ineffective counsel who should have challenged the warrantless search
and the conduct of the DEA agents, as they clearly had no consent. The
young man had no authority over the apartment and did not live there
or even stay there. Plus the officers told him, that he could go back
home to Mexico if he agreed to simply give the address of the residence.
He also had only been in the United States for approximately 14 days,
and he also spoke no English.

He also  was pressured and cohersed and intimidated all of which  supports
the fact that the warrantless unannounced entry into the apartment that
I was staying at and found in, was infact an unconstitutional entry and
search. Why Ms. Lederman did not pursue this or discuss this option
with  me is again prejudicial, and it further supports my lack of
faith in her to put forward my direct appeal plus to represent me
in any capacity whatsoever moving forward.

as a result, I reiterate again for the Court as I did in my March 14,
2019 letter, that I firmly  do not trust her with the protection of my
rights, under any appeal or throughout any other Court process.

I have detailed below some of the ongoing issues and conflicts with
the claims in her "Responce To The Court Order" of February 26 2019.
My plea was done without a Goverment plea or any structured agreement
from the Goverment, which I now realize was also another attorney error.

I note for the court that I received a sentence on October 12 2018,
of 262 months or 21 years and 10 months. This was fully unexpected as
I was told by Ms. Lederman that I would get much less time if I simply
pled guilty and did so quickly.

Ms. Lederman states in her response to the Court Order, page 1 paragraph
4 and page 2 paragraph 1 (Exhibit 1), the following; "In his letter to
the Court Mr. Jimenez-Nava complains that he has been unable to reach
me. Initially it must be noted that an appeal under the circumstances
here will potentially remedy only errors that are firmly found in the
record and are supported by the applicable law.

EXHIBIT 5

To that end a client whose case is on appeal will have very little input into the technical aspects of the record review, research and drafting of an appelant brief.

clearly, such a reality in no way lessens my ethical and professional obligation to keep my client Mr. Jimenez-Nava fully apprised of the status of his case ".

First I want to direct the Courts attention to many errors in the letter expressed as facts by Ms. Lederman, who has not kept me informed about my case or the appeal and has repeatably provided faulty advise to me, both in her facts presented to the court and my own conversations with her. When and if conversations ocationally took place, her information and advise to me was in fact faulty or in error.

I point to page 2 paragraph 3 of Ms Lederman's response, where she has provided a list of times and, what she claims are conversations with myself, to demostrate some of these issues I have also included the inmate Bureau Of Prisons (BOP) phone records, from the applicable time period. As the BOP inmate phone records show, (these phone records can not be altered in any way), Ms. Lederman's claimed facts are almost completely erroneous.

The "call chart" included by Ms. Lederman shows 10 calls. The first four calls dated December 12 and 20, January 15 and 17 are all in error as my records show clearly, no calls at all took place during that time period.

On January 25,2019 we spoke for 7 minutes at 2:20 pm, this was the only conversation we had in the months of November, December and up until January 25,2019 almost 90 days. On February 01,2019, I spoke with one of her staff members about my concerns and about replacing Ms. Lederman. Although Ms. Lederman's chart shows two calls one for .27 seconds and the second for 7 minutes, only one call was possible at that time as two calls can not be made by an inmate within 30 minutes of one another. The BOP system does not allow it.

EXHIBIT 5

The BOP phone records show a second call, I made to her office that day,
(Exhibit 2), at 11:31 am for 3 minutes. The purpose of this call was to
request Ms. Lederman to file a motion to replace her, and to also obtain
transcripts and Court records from my case as well, to ensure my appeal
was being filed on time,and that I could find out about the appeal
strategy.

Also on February 7,2019 Ms. Lederman again lists a call that did not
take place. Ms. Lederman's chart does not show my call to her office
on February 4,2019 at 3:27 pm where I spoke to her staff, stating that
I wanted to replace her. The staff memeber instructed me to send an
e-mail to Ms. Lederman about my concerns. On February 5,6,7 and 9,2019.
I sent Ms. Lederman e-mails, I have enclosed them in that order as
(Exhibits 3,4,5, and 6) respectively.

Ms. Lederman filed the Direct Appeal without any conversation with me.
Further to this fact the appeal she filed is full of errors and also
does not addresses the illegal and warrantless search of the residence
where I was found, arrested and became charged within this case.

In my view given the seriousness of the illegal and warrantless, entry
and search of the apartment residence, it is highly prejudicial that
Ms. Lederman leaves all of those facts outside the court record. This
action by her may also harm a future motion I have to bring to the
court a 2255 motion that would fully detail these constitutional
vilations and events.

Obviously the court is not apprised of all the issues regarding the
search, the investigators  claims of consent given by a 3rd party under
duress, but an evidence hearing if requiered would summarize these
facts and what transpired that day.

Then on February 27,2019. The day that the brief was file at 11:51 pm
Ms. Lederman sent me her first response to my requests the e-mail and
phone messages to remove her as my counsel.

EXHIBIT 5

This e-mail from Ms. Lederman is marked as (Exhibit 7) and is simply an attempt by Ms. Lederman to appear that she was working on my case, the appeal and our communication. These claims are in fact ficticious, as we had no communication of any substance.

Also it must be noted that I was surprised when told by Ms. Lederman on January 25,2019, that she had given away my appeal file to another lawyer a Mr. Mark McDoo. I was unable to get any contact information regarding Mr. McDoo or what was going on with my appeal although I did try to also contact him.

It was not until I received information about the appeal being file by my family, who retreived a copy from PACER that I was able to see the document file by Ms. Lederman.

I simply do not trust Ms. Lederman and her commitment to explore every defense on my appeal, and there is no way with the exception of replacing her, that I will have an unbiased appeal process. Her letter "Response to the Court", and my correspondence to the Court and responses, show a gravelly defective and prejudicial relationship that can not be remedied, and should not be permitted to continue.

I also want to point out that I am not alone in my concerns regarding Ms. Lederman's dilligence or lack there of as an attorney.I requested one of my family members to look  online for information about her performance as we have no online access except e-mail in the BOP system, and my family found several disturbing complaints from formal clients which I have enclosed marked as (Exhibits 8,9 and 10).

In conclusion I wish to point out that there are several key issues that helped to secure my wrongfull conviction. These issues relate to the performance of Ms. Lederman I do not know if her appeal brief has any issues of correct law within it, nor do I know, given our difficult and prejudicial relationship, if she even addressed my issues and concerns to the court.

EXHIBIT 5

Prior to sentencing and during the PSI interview process, Ms. Lederman nodded off and fell asleep, while my interview was underway. With respect to the "PSR process", she never reviewed any of the PSR with me, although she wrongfully states in the transcript record, within Court that she did. Is this an error that the Court did not ask me to confirm that she had not gone over the PSR with me. Was it a violation of my rights to not have a chance to review my own PSR, or did my rights become violated while she slept through the interview process, I am an inmate and certainly not legally trained but the case law I have read here in prison seems to support the fact that my constitutional rights have been violated.

Given these facts and I am prepared to provide more details of the problems within this relationship of Ms. Lederman and I, if required to get the public defender's office appointed to my case.

I respectuflly motion the court for the appointment of the public defenders appelant team to file a more detailed and correct appeal on my behalf, and to ensure none of my further rights are violated.
Respectfully,

*Juan Jimenez Nava*

Juan Jimenez Nava

Please note I am not able to make copies at the prison at this time and have sent only this single copy to the court.

EXHIBIT 5

JUAN JIMENEZ-NAVA
FED. ID. # 57033-177
FCI OAKDALE II
P.O. BOX 5010
OAKDALE, LA. 71463

August 12, 2019.

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT
600 SOUTH MAESTRI PLACE
NEW ORLEANS, LA. 70130

RE: UNITED STATES v. JIMENEZ-NAVA
CASE No. 4:18-CR-00093-A-3

Dear Clerk of the Court,

I am writing to the Court due to an issue with the correspondence from my case.

I have had issues with my appointed counsel and these issues continue. I did request a new Court appointed or "replacement counsel", that the Court did not see necessary to appoint.

After complaining of my appointed counsel, I can not get the attorney of record to copy me on any documents that I as an inmate, can not secure for myself. I believe that I should be "constitutionally entitled" to at least receive and be aware of:

1) What documents motions or actions are filed in my case and by whom;

and

2) To receive a copy of such documents, actions filings or "Court orders", so that I can protect any constitutional rights that I may have, and file anything required to do so.

EXHIBIT 6

I am requesting copies of all filed documents from 2019 only, so that I can review and in doing so, protect my rights to a "fair and just appeal process."

I thank you for your assistance and the copies of the pleadings, motions ruling or any "orders of the Court."

Sincerely

JUAN JIMENEZ

Juan Jimenez-Nava
Fed. Id. # 57033-177
FCI OAKDALE II
P.O. BOX 5010
OAKDALE, LA. 71463

EXHIBIT 6

EXHIBIT A

## TABLE OF CONTENTS FOR THE MEMORANDUM OF LAW
## IN SUPPORT OF THE 2255 MOTION TO VACATE

I.   OPENING STATEMENT AND PRAYER FOR RELIEF:

II.  FACTUAL BACKGROUND AND CASE HISTORY:

    A) HISTORY OF EVENTS:

III. OVERVIEW OF PETITIONER'S CONSTITUTIONAL INJURY:

IV.  THE INHERENT PROBLEMS FACED BY PRO-SE ALIEN PRISONERS IN THE
    HABEAS CORPUS PROCESS:

V.   THE FUNDAMENTAL RIGHT TO EFFECTIVE COUNSEL:

    A) PLEA BARGAINING AND THE SIXTH AMENDMENT;

    B) THE INVOLUNTARY PLEA PROCESS;

    C) CASE LAW OVERWHELMINGLY SUPPORTS THAT THE PETITIONER'S
       PLEA WAS INVOLUNTARY OBTAINED;

    D) DUE PROCESS AND THE REQUIREMENT THAT THE PLEA BE INTELLIGENTLY
       AND VOLUNTARILY MADE;

    E) GUILTY PLEAS BY MISREPRESENTATION DECEPTION, AND/OR NEGLIGENCE

    F) THE INVOLUNTARY GUILTY PLEA ARGUMENT CONCLUSION;

VI.  FOURTH AMENDMENT ARGUMENT:

    A) A MERITORIOUS FOURTH AMENDMENT VIOLATION;

    B) COUNSEL'S FOURTH AMENDMENT OBLIGATIONS;

    C) AN OVERNIGHT GUEST'S FOURTH AMENDMENT STANDING;

    D) PSYCHOLOGICALLY COERCED INVALID NON-STANDING CONSENT;

    E) FAILURE TO MOTION TO SUPPRESS EVIDENCE IS CONSTITUTIONALLY
       INEFFECTIVE ASSISTANCE OF COUNSEL;

    F) THE FIFTH CIRCUIT SIX CRITICAL VOLUNTARY CONSENT FACTORS
       AND CONSTITUTIONAL CONSIDERATIONS;

    G) THE FAILURE TO KNOCK AND ANNOUNCE POLICE PRESENCE;

VII. CONCLUSION:

EXHIBIT A

EXHIBIT B

## SUPREME COURT CASES

| # | Case | Year | Pages |
|---|------|------|-------|
| 1. | BERGER V. UNITED STATES | (1935) | 2, |
| 2. | STRICKLAND V. WASHINGTON | (1984) | 5,8,9,12,14,15,17,18,19,24, 28,30,32,36,42, |
| 3. | HILL V. LOCKHART | (1985) | 5,19,22,28, |
| 4. | KIMMELMAN V. MORRISON | (1986) | 5,17, |
| 5. | NORTH CAROLINA V. ALFORD | (1968) | 10,23,25, |
| 6. | JOHNSON V. AVERY | (1969) | 11, |
| 7. | KURTZ V. MOFFITT | (1885) | 11, |
| 8. | BOUNDS V. SMITH | (1971) | 11,12, |
| 9. | HATFIELD V. BAILLEAX | (1961) | 11, |
| 10. | GILMORE V. LYNCH | (1971) | 11, |
| 11. | CASEY V. LEWIS | (1996) | 11, |
| 12. | HARRIS V. NELSON | (1969) | 12, |
| 13. | HAINES V. KERNEZ | (1972) | 12, |
| 14. | HENSLEY V. MUNICIPAL COURT | (1973) | 12, |
| 15. | REED V. ROSS | (1984) | 12, |
| 16. | MURRY V. CARRIER | (1986) | 12, |
| 17. | COMER V. SCHRIRO (COURT OF APPEALS NINTH CIRCUIT) (2005) | | 12, |
| 18. | GIDEON V. WAINWRIGHT | (1963) | 13,14,15, |
| 19. | POWELL V. ALABAMA | (1932) | 13,15,16, |
| 20. | EDWARDS V. CARPENTER | (2000) | 13, |
| 21. | BRADY V. UNITED STATES | (1970) | 13,21,25,26,27, |
| 22. | BOUSLEY V. UNITED STATES | (1998) | 13,24, |
| 23. | HENDERSON V. MORGAN | (1976) | 13, |
| 24. | KIMMELMAN V. ROBINSON | (1986) | 14,16, |
| 25. | KATZ V. UNITED STATES | (1967) | 14, |
| 26. | RAWLINGS V. KENTUCKY | (1980) | 14,38, |
| 27. | UNITED STATES V. CRONIC | (1984) | 14,15,16, |
| 28. | UNITED STATES V. ASH | (1973) | 15, |
| 29. | ARGERSINGER V. HAMLIN | (1972) | 15,18, |
| 30. | JOHNSON V. ZERBST | (1938) | 15, |
| 31. | MAINE V. MOLTON | (1985) | 15, |
| 32. | AVERY V. ALABAMA | (1940) | 15, |
| 33. | EVITTS V. LUCEY | (1985) | 15,16, |
| 34. | CUYLER V. SULLIVAN | (1980) | 15,28, |
| 35. | McMANN V. RICHARDSON | (1970) | 15,18,24,25,28, |

EXHIBIT B 1 OF 4

EXHIBIT B 2 of 4

| # | Case | Year | Pages |
|---|------|------|-------|
| 36. | STONE | | 16, |
| 37. | HERRING V. NEW YORK | (1975) | 16, |
| 38. | ADAMS V. UNITED STATES EX. REL. McMANN | (1942) | 17,18, |
| 39. | LAFLER V. COOPER | (2012) | 18,19,20, |
| 40. | MISSOURI V. FRYE | (2012) | 18, |
| 41. | PADILLA V. KENTUCKY | (2010) | 18,19,20, |
| 42. | LIBRETTI V. UNITED STATES | (1995) | 19, |
| 43. | VONMOLTKE V. GILLIES | (1948) | 19,25,26,27, |
| 44. | McCARTHY V. UNITED STATES | (1969) | 21,25, |
| 45. | BOYKIN V. ALABAMA | (1969) | 21,23,24,25, |
| 46. | PARKER V. RALEY | (1992) | 21, |
| 47. | UNITED STATES V. RUIZ | (2002) | 21, |
| 48. | MACHIBRODA V. UNITED STATES | (1962) | 23,25, |
| 49. | KERCHEVAL V. UNITED STATES | (1927) | 25, |
| 50. | CHAMBER V. FLORIDA | (1940) | 25, |
| 51. | WALKER V. JOHNSTON | (1941) | 25,27, |
| 52. | SMITH V. O'GRADY | (1941) | 25,27, |
| 53. | WALEY V. JOHNSTON | (1942) | 25, |
| 54. | WELLS V. UNITED STATES | (1943) | 25,27, |
| 55. | HAWK V. OLSON | (1945) | 25,27, |
| 56. | WOODS V. NIERSTHEIMER | (1946) | 25, |
| 57. | TOWNSEND V. BURKE | (1948) | 25, |
| 58. | QUICKSALL V. MICHIGAN | (1950) | 25,27, |
| 59. | MOORE V. MICHIGAN | (1957) | 25, |
| 60. | MEMPA V. RAY | (1967) | 25, |
| 61. | UNITED STATES V. JACKSON | (1968) | 25, |
| 62. | PARKER V. NORTH CAROLINA | (1970) | 25,27, |
| 63. | WILLIAMS V. KAISER | (1945) | 25, |
| 64. | CARTER V. ILLINOIS | (1946) | 25, |
| 65. | DEMEERLEER V. MICHIGAN | (1947) | 25, |
| 66. | FOSTER V. ILLINOIS | (1947) | 25, |
| 67. | BUTE V. ILLINOIS | (1948) | 26, |
| 68. | PATERNO V. LYONS | (1948) | 26, |
| 69. | UVEGES V. PENNSYLVANIA | (1948) | 26, |
| 70. | PALMER V. ASHE | (1951) | 26, |
| 71. | PENNSYLVANIA EX REL HERMAN V. CLAUDYK | (1956) | 26, |
| 72. | KIRK V. LOUISIANA | (2002) | 29,31, |
| 73. | WILKES V. WOOD | (1763) | 31, |
| 74. | GROH V. RAMIREZ | (2004) | 31, |

75. PAYTON V. NEW YORK              (1980)        31,38,
76. TERRY V. OHIO                  (1968)        31,
77. SCHNECKLOTH V. BUSTAMONTE      (1973)        31,34,37,
78. ILLINOIS V. RODRIGUEZ          (1990)        31,
79. ARIZONA V. GANT                (2009)        34,
80. BYRD V. UNITED STATES          (2018)        38,
81. RAKAS V. ILLINOIS              (1978)        38,
82. ALDERMAN V. UNITED STATES      (1969)        38,
83. SMITH V. MARYLAND              (1979)        38,
84. UNITED STATES V. JONES         (2012)        38,
85. MINNESOTA V. CARTER            (1998)        38,
86. TERRY V. OHIO                  (1968)        39,
87. TENNESSEE V. GARNER            (1985)        40,
88. HUDSON V. MICHIGAN             (2006)        40,
89. WILSON V. ARKANSAS             (1995)        40,
90. RICHARDS V. WISCONSIN          (1997)        40,

## DISTRICT COURT CASES

1. UNITED STATES V. AMAYA     (5th CIR. 1997)        13,
2. JAMES V. CAIN              (5th CIR. 1995)        13,
3. MORRIS V. THALER           (5th CIR. 2011)    22,29,33,35,36,
4. UNITED STATES V. COVITT    (5th CIR. 2008)    22,23,35,36,
5. BROCK V. UNITED STATES     (5th CIR. 2017)     23,36,
6. WELLS V. THALER            (5th CIR. 2012)        24,
7. UNITED STATES V. URIAS-MARRUFO (5th CIR. 2014)   24,
8. UNITED STATES V. BATAMA    (5th CIR. 2015)        24,
9. UNITED STATES V. JUAREZ    (5th CIR. 2012)        24,
10. UNITED STATES V. DOVALINA (5th CIR. 2001)        28,
11. UNITED STATES V. HERNANDEZ(5th CIR. 2000)        30,
12. HERRING V. ESTELLE        (5th CIR. 1974)       32,36,
13. UNITED STATES V. ROGERS   (5th CIR. 1990)        33,
14. STREETMAN V. LYNAUGH      (5th CIR. 1987)        33,
15. UNITED STATES V. GOMEZ-DIAZ(5th CIR. 1983)       34,
16. UNITED STATES V. KELLY    (5th CIR. 1993)        34,
17. UNITED STATES V. SMITH    (5th CIR. 1992)        34,
18. UNITED STATES V. WALDROP  (5th CIR. 2005)        35,
19. UNITED STATES V. CASTRO   (5th CIR. 1999)        35,

20. CALIFORNIA V. HODARI                                    35,
21. SMITH V. ESTELLE                   (5th CIR. 1983)      35,
22. UNITED STATES V. McDONALD          (5th CIR. 2011)      36,
23. UNITED STATES V. GOMEZ-MORENO(5th CIR. 2007)            37,
24. UNITED STATES V. JONES             (5th CIR. 2001)      37,
25. UNITED STATES V. KELLET            (5th CIR. 1993)      37,
26. UNITED STATES V. OLIVIER-BECERRIL (5th CIR. 1988)       37,
27. UNITED STATES V. GALBERTH          (5th CIR. 1988)      37,
28. UNITED STATES V. STANDRIDGE  (11th CIR. 1987)           38,

EXHIBIT B 4 OF 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION


UNITED STATES OF AMERICA

v.                                    CASE NO. 4:18-CR-00093-A-3


JUAN JIMENEZ-NAVA

CERTIFICATE OF FILING AND SERVICE

I, Juan Jimenez-Nava, hereby certify that I have served 3 true
correct copies of the following:

Motion to Vacate, Set Aside, or Correct a Sentence Under 28 U.S.C.
§ 2255, which is deemed filed at the time it was delivered to
prison authorities for forwarding, * Houston v. Lack, 487 U.S.
266 (1988), upon the respondent and/or its attorney(s) of record
by placing same in a sealed first class pre-paid postage envelope
addressed to the United States District Court for the Northern
District of Texas, Fort Worth Division. The Clerk of the Court,
501 W. 10th St., Room 310, Fort Worth, Texas, 76102., and deposited
into this institution mail system located at FCI OAKDALE II, P.O.
BOX 5010, OAKDALE, LOUISIANA, 71463.


I hereby certify that on May 7, 2020, I forwarded a copy of the
foregoing documents to the Court at the address above;

                          JUAN JIMENEZ NAVA
                          _____
                          Juan Jimenez-Nava

*Pursuant to Fed. Rule App. F 25(a)(2)(c), " A paper filed by an
inmate confined in an institution is timely filed if deposited in
the institution's internal mail system on or before the last day
for filing."